# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CT-00386-SCT

*VICKIE BALOUCH*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/18/2003 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | L. ABRAHAM ROWE, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE PIKE COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED - 10/05/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Vickie Balouch was found guilty by a Pike County Circuit Court jury of the "placing out" of D.L.[1] in violation of Miss. Code Ann. §§ 43-15-23 (Rev. 2004). She was sentenced to three years in the custody of the Mississippi Department of Corrections, with one year to serve and two years on post-release supervision, and fined $1,000. She appealed, and the case was assigned

---

[1] We use these initials instead of the child's full name in order to protect the child's interests.

to the Court of Appeals, which reversed her conviction and rendered a verdict of not guilty, based on its holding that evidence in the record was insufficient to support the verdict. Upon grant of certiorari, we conclude the Court of Appeals erred. Therefore, we reverse the judgment of the Court of Appeals and reinstate and affirm the trial court judgment entered consistent with the jury verdict.

## FACTS

¶2. Balouch assisted Dr. David Smith and his wife, Autumn Smith, in connection with their possible adoption of D.L. The facts set forth by the Court of Appeals in its opinion (with re-numbered footnotes) are stated in their entirety, as follows:

> On May 2, 2002, Balouch contacted her physician, Dr. David Smith, regarding the adoption of three-year-old [D.L.]. At the time, both of [D.L.'s] biological parents were incarcerated, and [D.L.] had been temporarily placed in the home of her foster parents, John and Paula Newton.[2] Balouch falsely informed Dr. Smith that she had a working relationship with the Mississippi Department of Human Services (DHS) and that she worked with battered women and children. She also misrepresented that [D.L.] had been sexually abused by John and that Paula was addicted to drugs.[3] Later that night, Dr. Smith called Balouch to inform her that he and his wife Autumn were interested in pursuing the adoption. Balouch brought the child to visit with the Smiths the next day.[4]
> Over the course of her communications with the Smiths, Balouch also misrepresented that [D.L.'s] father was incarcerated in a Texas prison and that he

---

[2] John Newton was formerly married to [D.L.'s] biological mother.

[3] Balouch also told the Smiths that [D.L.] had been removed from the Newtons' home due to drug use by Paula.

[4] Paula was under the belief that Balouch had taken [D.L.] to the store and was unaware that she had actually taken the child to visit the Smiths.

2

was willing to relinquish his paternal rights.[5] She also stated that she had a working relationship with local attorney Jack Price whom she recommended to handle the adoption. Balouch informed the Smiths that they could expect to pay up to $5,000 in attorney fees and expenses for the adoption. The Smiths soon learned that [D.L.'s] father was unwilling to consent to the adoption, and Balouch was subsequently indicted for placing out a child in violation of Mississippi Code Annotated section 43-15-23 (Rev.2004).[6]

*Balouch v. State,* 2005 WL 2358338, *1 (Miss. Ct. App. 2005).

## PROCEEDINGS IN THE COURT OF APPEALS

¶3.    Balouch raised four issues on appeal, challenging the sufficiency and weight of the evidence; improper jury instructions; witness testimony in violation of physician-patient privilege; and speculative lay opinion testimony. Finding reversible error due to insufficiency of the evidence and holding that the State failed to prove essential elements of the crime, the Court of Appeals declined to address the other issues. *Balouch v. State,* 2005 WL 2358338, *2-4. Specifically, the Court of Appeals held the State failed to prove that Balouch *arranged* to place D.L. in the Smiths' home for the purpose of free care and adoption pursuant to Miss Code Ann. § 43-15-23(1). *Id.*\*2. The Court of Appeals further held that even if Balouch illegally placed the child out, the State failed to prove she *received or requested* compensation for her services pursuant to Miss. Code Ann. § 43-15-23(2). *Id.* In conclusion, the Court of

---

[5] [D.L.'s] father was actually incarcerated in Mississippi and was unaware of Balouch's communications with the Smiths.

[6] The grand jury returned a two-count indictment against Balouch which was later severed by the trial court. Count one charged Balouch with requesting compensation for placing out a child, and count two charged her with illegally obtaining prescription drugs in violation of Mississippi Code Annotated section 41-29-144 (Rev. 2004).

3

Appeals determined the evidence was insufficient to support the verdict and reversed and rendered. *Id* *4.

¶4.     The State's petition for writ of certiorari raised the sole issue of whether the Court of Appeals erred in its interpretation of the statutory language of Miss. Code Ann. § 43-15-23, an issue of first impression.   We found the petition to be well-taken, and granted certiorari. After due consideration of not only the single issue raised by the State on certiorari, but also all other issues raised on direct appeal,   we now reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the Circuit Court of Pike County.

## ANALYSIS

¶5.     In *Bush v. State,* 895 So. 2d 836, 843-44 (Miss. 2005), this Court laid to rest some confusion surrounding the difference between review of the weight and sufficiency of the evidence.   When reviewing the sufficiency of the evidence, this Court, after viewing the evidence in a light most favorable to the prosecution, must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.* at 843.  If this Court determines the evidence is insufficient to support the verdict, the proper remedy is to reverse and render.  *Id.*    Where sufficiency of the evidence is determined within a context requiring the definition of statutory elements of a crime, the correct statutory construction by the courts is critical.

¶6.     Balouch was found guilty of the placing out of a child in violation of Miss. Code Ann. § 43-15-23, which became effective from and after July 1, 1986, and which reads in pertinent

4

part, as follows:

> (1) As used in this section the term "placing out" means to *arrange* for the free care of a child in a family, other than that of the child's parent, stepparent, grandparent, brother, sister, uncle or aunt or legal guardian, for the purpose of adoption or for the purpose of providing care. (Emphasis added).

> (2) No person, agency, association, corporation, institution, society or other organization, except a child placement agency licensed by the Department of Public Welfare under Section 43-15-5, shall *request*, receive or accept any compensation or thing of value, *directly or indirectly*, for the placing out of a child. (Emphasis added).

> (3) No person shall pay or give any compensation or thing of value, directly or indirectly, for placing out of a child to any person, agency, association, corporation, institution, society or other organization except a child placement agency licensed by the Department of Public Welfare.

> . . . . [here deleted sub-section 4 which talks of payment of salaries to DHS, etc.]

> (5) Any person, agency, association, corporation, institution, society or other organization violating the provisions of this section shall be guilty of illegal placement of children and shall be punished by a fine not to exceed Five Thousand Dollars ($5,000.00) or by imprisonment not more than five (5) years, or both such fine and imprisonment.

¶7. The State points to the deception perpetrated by Balouch. It was established through the testimony of Dr. Smith that Balouch claimed she was working with social services and attorney Jack Price, and that the adoption would cost approximately $5,000. However, she was not involved with either social services or Price. The State argues "it is an absolutely reasonable inference from the entire record that defendant asked for money for arranging the 'placing out' or 'placing in' of the child. Defendant was the only person gathering information, correct names, addresses, the sole keeper of the information regarding the child transfer."

¶8.     Balouch responds only that the State has no grounds for seeking a writ of certiorari, because none of the M.R.A.P. 17 grounds for granting certiorari exist.   She bases her position on her belief that "[t]he overwhelming majority of the opinion by the Court of Appeals is obiter dictum, and it is this dicta which the State seeks to have reviewed by this Court."   Thus, she argues, the State has "completely ignored the actual basis for the ruling of the Court of Appeals and has not sought a review of the actual basis for that ruling."   She goes on to state the basis "was that the State failed to prove one of the essential elements of the crime charged, specifically that [her] actions constituted a placing out of the child for adoption."   We reject Balouch's argument.   Because the determination by the Court of Appeals was based on an erroneous interpretation of the plain language of Miss. Code Ann. § 43-15-23, this matter is properly before this Court on writ of certiorari pursuant to M.R.A.P. 17.

¶9.     The Court of Appeals stated that Balouch had to *receive* something of value to be guilty pursuant to the Miss. Code Ann. § 43-15-23, but went on to hold Balouch did not request or receive a thing of value for placing out D.L.   *Balouch v. State,* 2005 WL 2358338, *2, *6, 12-13.   Further, the evidence is sufficient to show that a rational juror could find that Balouch requested, directly or indirectly, payment for the placing out of D.L.   Balouch never directly asked the Smiths to give her anything of value for the adoption.   However, in order to prove Balouch guilty of placing out D.L., the State need only prove she directly or indirectly requested a thing of value; the statute does not require she actually receive anything of value.   *See* supra Miss. Code Ann. § 43-15-23(2).   The Smiths testified that Balouch told them the adoption would cost approximately $5,000.   Dr. Smith expressed concern about this cost and asked Balouch why

it would be so much. Balouch responded that she was working with Jack Price, an attorney, and it was to cover the cost of Price flying to Texas to meet with D.L.'s biological father to get the adoption papers signed and that " there would be other expenses involved too." At this point Balouch was the only person with whom the Smiths had dealt regarding the adoption. Dr. Smith testified that "[Balouch] presented herself as working with [Price], so she had done all this other information collecting for him, so why wouldn't I assume, just like anyone else would, that I would be giving the money to her to get to him later."

¶10. Balouch misrepresented to the Smiths that D.L.'s father was incarcerated in a Texas prison and was willing to relinquish his parental rights. In fact, D.L.'s biological father, who was incarcerated in Leakesville, Mississippi, testified that he did not even know Balouch and was never contacted regarding the adoption. In addition, Price testified he was not associated with Balouch, and that Balouch called him only after she had made substantial arrangements for the adoption and told the Smiths the adoption would cost $5,000. Price further testified that he and Balouch never discussed a fee, and furthermore, his legal fee for an adoption is $750, and he only handles uncontested adoptions. Moreover, Balouch told the Smiths she was associated with the Department of Human Services, and there was testimony revealing this statement was false as well.

¶11. Given Balouch's ongoing and exclusive relationship with the Smiths regarding the potential adoption, together with her statement to the Smiths that the adoption would cost $5,000 despite the fact that she was not affiliated with an attorney or social services at the time, is sufficient for a rational juror to find she directly or indirectly requested a thing of value for

7

placing out D.L. See ***Hooker v. State,*** 716 So. 2d 1104, 1110 (Miss. 1998) (A jury is allowed to draw all reasonable inferences from the evidence). Further, when reviewing the sufficiency of the evidence, the State is given the benefit of all favorable inferences that may reasonable be drawn from the evidence. ***Miller v. State,*** 875 So. 2d 194, 198 (Miss. 2004). Therefore, the Court of Appeals erred when it determined the evidence was insufficient to support the verdict because there was no evidence she received compensation for placing out D.L.

¶12. The Court of Appeals also held the evidence was insufficient to show Balouch *arranged* the placing out of D.L. ***Balouch v. State,*** 2005 WL 2358338, *2. Specifically, the Court of Appeals stated "[a]lthough Balouch took the child to visit with the Smiths on one occasion, the record is clear that [D.L.] remained in her foster parents' home at all times. As a result we fail to see how Balouch's actions constituted a 'placing out' within the meaning of the statute". ***Balouch v. State,*** 2005 WL 2358338, *2. Essentially, the Court of Appeals held that to be guilty for the placing out of a child, the defendant had to actually place that child in another's home. This holding is contrary to the plain language of the statute. The statutory definition states "'placing out' means to *arrange* for the free care of a child in a family . . . . for the purpose of adoption." Miss. Code Ann. § 43-15-23(1) (emphasis added).

¶13. The word "arrange" means "1. [t]o place in proper, desired, or convenient order. 2. [t]o come to an agreement or understanding regarding. 3. [t]o prepare or plan." Random House Webster's College Dictionary 75 (2000). This definition is plain and unambiguous. "Where the language used by the legislature in a statute is plain and unambiguous and converys [sic] a clear

8

and definite meaning there is no occasion to resort to rules of statutory interpretation." ***Miss. Power Co. v. Jones***, 369 So. 2d 1381, 1388 (Miss. 1979). The record is clear that Balouch made plans and prepared for D.L.'s adoption. Balouch made the initial contact with Smith regarding the adoption. Further, she did most of the planning. Dr. Smith testified that Balouch frequently communicated with them regarding the adoption, including giving them information about D.L.'s birth parents.

¶14. Further questioning of Dr. Smith revealed the following:

> A. [Balouch] told us that she would be coming with a social worker to the office with the child, and that we would be able t[o] see her and visit with her then.
>
> . . . .
>
> Q. Who brought [D.L.] to the office?
> A. [Balouch].

Furthermore, Autumn Smith testified ". . . [Balouch] brought the child by the office. That was the first time I met her". Autumn Smith's testimony also revealed that she and Balouch took D.L. to the hospital where Dr. Smith was seeing patients:

> [Balouch] was probably there a good 45 minutes at least, because then we loaded [D.L.] up and took her to Beacham. She put the car seat in Sandra's car, our nurse, because all I had was a truck, and [Balouch] encouraged me to take her down there because he couldn't get back. We were supposed to keep her that night, but the social worker wasn't able to come for her to meet us, so she encouraged me to take her to Beacham so David could meet her and spend the afternoon with her. She had to have her back by 4:00 o'clock.

Moreover, Balouch falsely claimed to work for the Department of Human Services. Finally, perhaps the most compelling evidence is Dr. Smith's testimony that Balouch said, in essence,

9

"if you want me to, even though its illegal, if you just give me the word, I'll go and get the child that night, and I'll bring her over to your house that night . . . ."

¶15.   In sum, a review of the transcript clearly reveals Balouch was heavily involved in the arranging of D.L.'s adoption by the Smiths.  Consequently, a rational juror could have, and in fact did determine that Balouch was guilty of the placing out of D.L.   The evidence is sufficient to support the jury's guilty verdict pursuant to Miss. Code Ann. § 43-15-23.

¶16.   This Court must presume the words in the statute were "intended to convey their usual meaning absent some indication to the contrary." *Wallace v. Town of Raleigh*, 815 So. 2d 1203, 1208 (Miss. 2002)(internal citation omitted).   There is nothing before this Court to indicate that the legislature intended anything other than the literal meaning of the words in this statute. The courts have no right to add anything to or take anything from  a statute, where the language is plain and unambiguous.  To do so would encroach upon the power of the Legislature.  The courts have neither the authority to write into the statute something which the legislators did not write therein, nor to ingraft upon it any exception not included by them. *Id.*

¶17.   We have also considered the remaining issues raised by Balouch before the Court of Appeals concerning claims of error due to improper jury instructions, witness testimony in violation of the physician-patient privilege, and speculative lay opinion testimony.   Having considered these additional assignments of error, we find them to be without merit and without need for discussion.

**CONCLUSION**

¶18. Under the plain language of Miss. Code Ann. 43-15-23, the evidence is sufficient to support the jury's decision to find Balouch guilty of the placing out of a child. Additionally, the other issues Balouch raised in her brief to the Court of Appeals are without merit. We reverse the judgment of the Court of Appeals and we reinstate and affirm the trial court's judgment.

¶19. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE PIKE COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED. CONVICTION OF PLACING OUT OF A CHILD AND SENTENCE OF THREE (3) YEARS, WITH ONE (1) YEAR TO SERVE AND TWO (2) YEARS ON POST-RELEASE SUPERVISION, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A FINE OF $1,000 AND COURT COSTS, AFFIRMED.**

**SMITH, C.J., WALLER, P. J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J.**

**DIAZ, JUSTICE, DISSENTING:**

¶20. The majority concedes that Ms. Balouch never directly asked for anything of value for the adoption. They hold that she should be convicted of a felony and sent to prison for "indirectly" requesting a "thing of value." However, the evidence in this case does not show that Ms. Balouch even "indirectly" requested anything and thus does not even rise to this abysmally low threshold for felony conviction. The evidence in this case reveals that at most Ms. Balouch provided an inaccurate estimate of the cost of the adoption. The majority's interpretation of the statute in question should send shivers down the spine of anyone involved in the private adoption process. It is an invitation for abuse of the criminal process and will have a chilling effect upon adoptions in this state. Further, to send someone to prison on such scant evidence is a reprehensible

11

miscarriage of justice and should never be condoned by this Court. By reinstating this verdict we are encouraging the prosecution of individuals based upon nothing more than someone's interpretation of another person's words. Finally, it must be pointed out that no other underlying crime was committed in this case. Ms. Balouch was prosecuted, convicted of a felony, and is being sent to prison simply because she conveyed her thought and uttered the words that this adoption "could cost up to $5,000, don't quote me on the exact price, but it could cost $5,000."

¶21. Therefore, I agree with the Court of Appeals that the State failed to prove an essential element of the crime charged, and I respectfully dissent. While the Court of Appeals did state there was insufficient evidence that Ms. Balouch *received* compensation for her services, the whole of the court's holding was that she never even *requested* compensation. ***Balouch v. State*,** 2006 Miss. App. LEXIS 690, *2-4. The record demonstrates that the State offered the testimony of three witnesses as evidence of Ms. Balouch's alleged request for compensation, and all three denied that she ever asked for money.

¶22. Angie McKenzie (Dr. Smith's office manager) testified that Ms. Balouch informed her "the [$5,000] would be for Jack Price to fly to Texas and for the paperwork to be done for the child to be adopted." When asked whether Ms. Balouch requested any compensation for herself, Ms. McKenzie replied, "no." Similarly, Dr. Smith testified that Ms. Balouch told him that he and his wife "needed to be prepared to pay $5,000 for th[e] adoption to be able to take place." When he asked why it was such a large sum of money, Ms. Balouch responded that "it was going to cost a lot of money for Jack Price to be able to fly to Texas," and "there would be other expenses involved too."

12

¶23. Furthermore, Autumn Smith offered the following testimony on cross-examination:

Q: And you asked Ms. Balouch what was involved in going private, did you not?

A: Yes, sir.

Q: And would you give me her exact quote, please, that's in your notes?

A: I asked what was involved by going private, and Vickie then said, "it could cost up to $5,000, don't quote me on the exact price, but it could cost $5,000."

Q: And your response, according to your notes?

A: I said, 'Whoa, I wasn't expecting that with the father ready to sign.'

Q: And what was her response?

A: Vickie said that we would have to pay for Jack to fly to Texas to get the papers signed.

Q: And there was no other conversation between you and Ms. Balouch about money, correct, other than what you just testified to out of your notes?

A: We talked more in discussion about the $5,000.

Q: And it was for payment to Jack for things that he was going to do?

A: She did not say that it was being given directly to Jack.

Q: What was it going to be given to?

A: She said that she - Vickie said that she helped him out as well, and that she was filling out necessary paper work, but she did not say the money was going to Jack. She just said it was for Jack.

Q: She didn't request that you give her the money, did she?

A: (No Answer.)

Q: Yes or no?

A: (No Answer.)

Q: She did not request that you give - Vickie did not request that you give her the money, did she?

A: She did not say give me the $5,000, no.

¶24.    As the Court of Appeals held, the above testimony fails to demonstrate that Ms. Balouch requested any compensation, either directly or indirectly.  In light of the State's failure to meet the burden of proof as to the statute's compensation element, I find it unnecessary to consider the other issues.  I would uphold the decision of the Court of Appeals to reverse and render.

**GRAVES, J., JOINS THIS OPINION.**