# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-KA-00946-SCT

*KENNETH MOORE, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/15/2008 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LATRICE WESTBROOKS |
| ATTORNEY FOR APPELLEE: | OFFICE OF ATTORNEY GENERAL |
| | BY: STEPHANIE BRELAND WOOD . |
| DISTRICT ATTORNEY: | JAMES H. POWELL, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/04/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., LAMAR AND KITCHENS, JJ.**

**GRAVES, PRESIDING JUSTICE, FOR THE COURT:**

¶1.	Kenneth Moore, Jr., was convicted of murder in the Circuit Court of Holmes County and sentenced to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC).  The record does not indicate that Moore filed any post-trial motions, but he subsequently filed this appeal.  We find that the issues raised by Moore are without merit and that his conviction should be affirmed.

**FACTS**

¶2. On the night of August 19, 2007, Moore, Cordarius McChriston and numerous others gathered at a nightclub in Holmes County called Club Greasy. During the night, some minor verbal exchanges occurred between Moore and McChriston. The exchanges later escalated into a brief, physical fight outside the club, during which McChriston apparently got the best of Moore. Moore's brother, Latravis Skinner, broke up the fight and walked Moore a distance away from the area to try to calm him down. Junior Williams, who was the owner of Club Greasy, Corey Johnson, and some others accompanied the pair and attempted to calm Moore. After several minutes, Moore indicated that he was going to retrieve his baseball cap from the ground near where the fight occurred. Instead, Moore approached McChriston and started shooting at him. McChriston, who had been struck by a bullet to the chest, ran away as Moore gave chase and continued firing more shots. McChriston jumped a fence and ran to a neighboring club called the Safe House, where he collapsed. McChriston died from his injury.

¶3. After a jury trial in the Circuit Court of Holmes County, Moore was convicted of murder and sentenced to life imprisonment in the custody of the MDOC. The record in this matter does not indicate that any post-trial motions were filed. Moore then filed this appeal.

**ANALYSIS**

**I. Whether the trial court erred when it failed to grant defendant's motion for continuance.**

¶4. Moore asserts that the trial court abused its discretion in failing to grant the motion for continuance he requested on the date of trial. The State asserts that Moore is procedurally

2

barred from raising this issue because it was not raised in a motion for new trial. Alternatively, the State asserts that this issue is without merit. The State is correct.

¶5. In *Metcalf v. State*, 629 So. 2d 558 (Miss. 1993), this Court said:

> On a motion for a new trial, certain errors must be brought to the attention of the trial judge so that he may have an opportunity to pass upon their validity before this Court is called upon to review them. *Weyen v. Weyen*, 165 Miss. 257, 139 So. 608 (1932). For example, the denial of a continuance in the trial court is not reviewable unless the party whose motion for continuance was denied makes a motion for a new trial on this ground.

*Metcalf*, 620 So. 2d at 561-62.

¶6. The record does not indicate that Moore ever filed a motion for new trial. Therefore, this issue is procedurally barred. Notwithstanding the procedural bar, Moore's assertion is without merit. In *Conway v. State*, 915 So. 2d 521 (Miss. 2005), Conway's attorney filed a motion for continuance five days before trial on the grounds that he was unprepared for trial. This Court has said:

> A circuit court judge has wide discretion in deciding whether to grant a continuance, and the denial of a motion for continuance will not be reversed absent a showing of substantial prejudice or manifest injustice. *Simmons v. State*, 805 So. 2d 452, 484 (¶ 72) (Miss. 2002). The moving party bears the burden of establishing prejudice. *Wilson v. State*, 755 So. 2d 2, 5 (¶ 11) (Miss. Ct. App. 1999). Conway offers no proof that his attorney at trial was unprepared or that he was prejudiced from his attorney's lack of preparation. This issue is without merit.

*Conway*, 915 So. 2d at 525.

¶7. In the instant case, Moore's attorney moved for a continuance on the date of trial, saying that she was not prepared because she had been busy with other cases. The trial court denied the motion, noting that counsel had known of the trial setting for some four months. On appeal, Moore's counsel asserts that the trial court erred in not granting the continuance

3

because the State had not yet propounded discovery. Specifically, counsel is referring to audiotapes of statements. The record shows that counsel was provided copies of the tapes and the accompanying transcript, but that the tapes were blank. However, counsel was not certain that the tapes were blank until she attempted to listen to the tapes enroute to the courthouse on the date of trial. Further, counsel did not notify the District Attorney's office of the problem until the date of trial. Moreover, the trial court recessed the proceeding so counsel could listen to the tape in question, Moore's statement, which was approximately fifteen minutes in length, and compare it to the previously provided transcript. Finally, counsel was given an opportunity to cross-examine Holmes County Sheriff's Deputy Chief Roosevelt March regarding the content of the tape and the accompanying transcript.

¶8. We find that Moore has failed to establish that the trial court abused its discretion in denying the motion for continuance. Further, Moore has failed to establish any showing of substantial prejudice.

**II. Whether the trial court erred when it allowed a prejudicial photograph to be admitted for identification purposes when the defendant did not contest identification of the deceased.**

¶9. Moore asserts that the trial court abused its discretion in allowing an autopsy photograph of McChriston to be admitted for identification purposes.

¶10. In *Noe v. State*, 616 So. 2d 298 (Miss. 1993), this Court said:

> It is well settled in this state that the admission of photographs is a matter left to the sound discretion of the trial judge and that his decision favoring admissibility will not be disturbed absent a clear abuse of that judicial discretion. . . . "A review of our case law indicates that the discretion of the trial judge runs toward *almost* unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value." . . . A photograph, even if gruesome, grisly, unpleasant, or even inflammatory,

4

may still be admissible if it has probative value and its introduction into evidence serves a meaningful evidentiary purpose.

*Id.* at 303 (citations omitted). Further, this Court has said that photographs have an evidentiary purpose "when they: (1) 'aid in describing the circumstances of the killing; (2) describe the location of the body and cause of death; (3) supplement or clarify witness testimony.'" *Jordan v. State*, 995 So. 2d 94, 110 (Miss. 2008).

¶11. In the instant case, the photograph depicts the head and neck area of McChriston and is neither gruesome nor inflammatory. Further, the photograph was introduced for identification purposes during the testimony of Dr. Steven Hayne. Accordingly, we find that this issue is without merit.

**III. Whether a mistrial should have been declared in light of juror misconduct.**

¶12. Moore asserts that the trial court should have sua sponte granted a mistrial because juror Sarah Wade was related to potential witness Dewan McGee and had traveled to the courthouse with him. Moore asserts that Wade did not acknowledge this during voir dire. However, Moore's assertion mischaracterizes what occurred. During voir dire by the State, the following exchange occurred:

> Q.     Dewan Magee, who lives on Wade Road? Anybody know Mr. Magee? Mr. Newman? Okay, Mr. Newman and Ms. Wade. Anything about, Ms. Wade, anything about your knowledge of Mr. Magee, if he was called as a witness, you could not be fair and impartial?
> A.     No.

¶13. Wade was never asked whether she was related to Magee. Further, Moore's counsel did not follow up on Wade's response during the State's voir dire that she knew Magee. More importantly, Moore's counsel did not object to Wade being seated on the jury. During

the State's case-in-chief, Moore's counsel then provided the trial court information that Wade and Magee had ridden to court together because Magee did not have transportation. The trial court then held a conference with Wade in which Wade reiterated that nobody had asked if she was related to Magee, but that she had informed the State that she knew him. Wade also explicitly stated that she had never discussed the case with Magee. Moore's counsel later informed the trial court that she had heard through a relative of Moore that Wade and another juror knew McChriston's family. The trial court ultimately removed Wade because of the possible appearance of impropriety of her riding with Magee. Moore's counsel did not move for a mistrial on this ground.

¶14. In *Gladney v. Clarksdale Beverage Co.*, 625 So. 2d 407, 418-19 (Miss. 1993), this Court said:

> Once an allegation of juror misconduct arises, then the next step is to consider whether an investigation is warranted. In order for the duty to investigate to arise, the party contending there is misconduct must make an adequate showing to overcome the presumption in this state of jury impartiality. Juror polling shall only be permitted by an attorney, outside the supervision of the court, upon written request.
> At the very minimum, it must be shown that there is sufficient evidence to conclude that good cause exists to believe that there was in fact an improper outside influence or extraneous prejudicial information.

*Gladney v. Clarksdale Beverage Co.*, 625 So. 2d 407, 418-19 (Miss. 1993). Further, the "Uniform Rules of Circuit and County Court Practice, Rule 3.12 allows the judge to declare a mistrial only when the harm done would render the defendant without hope of receiving a fair trial." *Reed v. State*, 764 So. 2d 511, 513 (Miss. 2000) (quoting *Roundtree v. State*, 568 So. 2d 1173, 1178 (Miss. 1990)).

6

¶15.   Moore's counsel failed to inquire during voir dire into Wade's relationship with Magee. Moore's counsel failed to object to Wade being seated on the jury. Moore's counsel failed to inform the trial court of any relationship between Wade and Magee until the trial had already begun. Moore's counsel failed to move for a mistrial. The trial court thoroughly investigated the allegations and found that there had been no inappropriate communication. The trial court removed Wade prior to any deliberations to avoid the appearance of any impropriety. Further, Magee indicated he did not know anything about the case, and he did not testify. Moore has failed to establish that good cause exists to believe that improper outside influence occurred or prejudicial information was exchanged. Accordingly, we find that this issue is without merit.

**IV.  Whether the trial court erred in allowing speculative testimony.**

¶16.   Moore asserts that, during the testimony of Skinner, Moore's brother, that speculative testimony was elicited regarding the body weight of McChriston. Moore cites two cases, *Edmonds v. State*, 955 So. 2d 787 (Miss. 2007),[1] and *Balouch v. State*, 938 So. 2d 253 (Miss. 2006). However, *Edmonds* involved speculative testimony of an expert witness. *Edmonds*, 955 So. 2d at 791. In *Balouch*, the Court found that the assignment of error involving speculative testimony was without merit and that there was no need for discussion. *Balouch*, 938 So. 2d at 260. Further, in the instant case, the testimony complained of was merely an attempt to find out whether Skinner knew if Moore was larger or smaller in physical size than McChriston. We find that this issue is without merit.

---

[1]Appellate counsel for Moore provided an incorrect citation for this case. We supply the correct citation.

**V. Whether the evidence supports a verdict of manslaughter rather than murder.**

¶17.    Moore asserts that the evidence was insufficient to support a verdict of murder. Specifically, Moore asserts that the evidence showed that the killing was done in the heat of passion, thereby mitigating the killing to manslaughter. The State asserts that Moore is procedurally barred from challenging the sufficiency of the evidence because he did not renew his motion for directed verdict at the close of his case in chief. The State also asserts that Moore did not present a peremptory instruction to the trial court or file a motion for judgment notwithstanding the verdict.

¶18.    This Court, in *Wright v. State*, 540 So. 2d 1, 3 (Miss. 1989), said:

> In *Harris v. State*, 413 So.2d 1016, 1018 (Miss.1982), we held:
>
> > It is elemental that after a motion for directed verdict is overruled at the conclusion of the State's evidence, and the appellant proceeds to introduce evidence in his own behalf, the point is waived. In order to preserve it, the appellant must renew his motion for a directed verdict at the conclusion of all the evidence. *Ross v. State*, 234 Miss. 309, 106 So. 2d 56 (1958); *Fields v. State*, 293 So. 2d 430 (Miss.1974). Also see *State v. Russell*, 358 So. 2d 409, 413 (Miss.1978).
>
> > The appellants waived error, if any, in the court's refusal to grant them a directed verdict at the close of the State's case-in-chief when they proceeded to present evidence in their behalf. Because they did not renew this motion by way of a motion for a directed verdict at the conclusion of the evidence or via a motion for a peremptory instruction, any objection they may have had to the sufficiency of the evidence is waived. *Harris v. State*, 413 So. 2d 1016, 1018 (Miss.1982).

*Wright v. State*, 540 So. 2d 1, 3 (Miss. 1989). *See also Turner v. State*, 721 So. 2d 642, 647 (Miss. 1998); and *Green v. State*, 631 So. 2d 167, 171 (Miss. 1994).

8

¶19. Moore did move for a directed verdict at the close of the State's case-in-chief. However, Moore did not renew this motion at the conclusion of all of the evidence. Therefore, any objection Moore has to the sufficiency of the evidence has been waived. Notwithstanding that Moore is procedurally barred from objecting to the sufficiency of the evidence, we find that this issue is without merit.

¶20. The jury received a manslaughter instruction. Moore agreed to the use of the State's manslaughter instruction, S-2, because the proposed defense instruction did not include the elements of manslaughter. The State's instruction said, in relevant part:

> Therefore, if you should find the State has failed to prove all of the essential elements of Murder beyond a reasonable doubt, you will then proceed with your deliberations to decide whether the State has proved beyond a reasonable doubt all of the essential elements of the lesser crime of Manslaughter.
>
> If you find from the evidence in this Cause, beyond a reasonable doubt, that the Defendant, KENNETH MOORE, JR., on or about August 19, 2007, in Holmes County, Mississippi, did willfully, unlawfully, feloniously and without authority of law, kill Cordarius McChriston, without malice, in the heat of passion, by the use of a deadly weapon, then you shall find the Defendant guilty of Manslaughter.
>
> If the State has failed to prove any essential element of the lesser included offense of Manslaughter beyond a reasonable doubt, you shall find the Defendant, KENNETH MOORE, JR., not guilty.

¶21. The trial court also granted an amended heat-of-passion instruction offered by the defense, which said:

> The term heat of passion is defined as a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.

9

¶22. The jury found the defendant guilty of murder, pursuant to instruction S-1, which said:

> Kenneth Moore, Jr., has been charged in the indictment with the offense of murder. If you find from all the evidence in this case beyond a reasonable doubt that:
> 1. Kenneth Moore, Jr. on or about August 19, 2007, in Holmes County Mississippi;
> 2. did wilfully, unlawfully, feloniously and without authority of law;
> 3. kill and murder Cordarius McChriston, a human being;
> 4. with malice aforethought or the deliberate design to kill said Cordarius McChriston;
> 5. by shooting him with a gun;
>
> then, you shall find the defendant, Kenneth Moore, Jr., guilty of murder as charged in the indictment.
>
> If the state has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find the defendant, Kenneth Moore, Jr., not guilty of murder.

¶23. As summarized by the Court of Appeals:

> When presented with a claim that the evidence is insufficient to sustain a conviction, we review the record in "a light most favorable to the State." *Robinson v. State*, 940 So. 2d 235, 239-40 (¶ 13) (Miss. 2006) (citing *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)). This Court "must accept as true all evidence consistent with [the defendant's] guilt, together with all favorable inferences that may be reasonably drawn from the evidence, and disregard the evidence favorable to the defendant." *Id*. at 240 (¶ 13). If the evidence is "of such quality and weight that, 'having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [persons] in the exercise of impartial judgment might reach different conclusions on every element of the offense,' the evidence will be deemed to have been sufficient." *Bush v. State*, 895 So. 2d 836, 843 (¶ 16) (Miss. 2005) (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)).

*Fair v. State*, 25 So. 3d 380, 382-83 (Miss. Ct. App. 2009).

¶24. Murder is "(1) The killing of a human being without the authority of law by any means" or "(a) When done with deliberate design to effect the death of the person killed or of any human being . . . ." Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2006). Manslaughter is "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or

unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense . . . ." Miss. Code Ann. § 97-3-35 (Rev. 2006).

¶25. Moore asserts that the evidence shows he killed McChriston in the heat of passion, mitigating the killing to manslaughter. Moore's assertion is not supported by the record in this matter. Witnesses for both the State and the prosecution testified consistently as to what occurred on the night in question. Witnesses testified that the fight lasted only a couple of minutes. Although there was testimony, as mentioned above, that Moore was losing the fight, the only evidence of injury sustained by Moore was a scrape on his elbow and a bloody nose.

¶26. Junior Williams, the owner of Club Greasy, specifically said:

> Q. And tell us what you saw when you got outside the club?
> A. There was a group of guys standing down there at the end of the driveway.
> Q. What were they doing?
> A. They wasn't doing nothing right then. By the time I got to them, they went to fighting.
> . . .
> Q. And how long did this fight last?
> A. Probably about three minutes, if that long.

Williams also testified that Moore previously had been told that he was not to be at the club.

¶27. Moore's brother, Latravis Skinner, broke up the fight, and McChriston and Moore separated, with McChriston walking back toward the building and Moore walking toward the end of the driveway. Williams, Skinner, Corey Johnson, and some others talked to Moore and attempted to calm him down. Williams testified as follows:

> Q. [Prosecutor] Tell me what you said to [Moore].
> A. I said, "Man, the police are coming now, and you just go and we'll forget all of this." He was like, "All right. I'm through with it." He

11

walked down and broke to the right and went back up there and went to shooting.

Williams further testified:

> Q. Okay. Well, let me ask you this: When the fight was broken up, was there any indication that it would continue at some point?
> A. After we talked to them, I thought it was through with.

¶28. Gregory Malone testified that, after the fight, Moore stayed down the road talking to Skinner and the others for approximately fifteen to twenty minutes before he returned and shot McChriston. Jennifer Grant testified, in relevant part:

> Q. Okay. And while you were at this club, did you have an occasion to see anything that you thought was unusual?
> A. Yes.
> Q. Tell us what it was.
> A. They had an altercation like a fight was going on between Kenny Moore and [McChriston], and once the fight and everything was over with, people tried to talk to Kenny Moore.
> Q. Who did you see try to talk to Kenny Moore.
> A. Corey Johnson and Jamario Johnson and his brother, Travis Skinner.
> Q. And how do you know they were trying to talk to Kenny Moore?
> A. Because they had broke them up, and they took him to the side.
> Q. Okay. And after they – well, did, in fact, you saw them together?
> A. Yes.
> Q. All right. Did it appear that they did talk to him?
> A. Yes.
> Q. Okay. Without telling us what they said, what happened after that conversation with him?
> A. Well, after they got through talking to him, he walked back. I thought he was like going back to his car or something to sit down.
> Q. Okay, now, who is this "he" you're talking about?
> A. Kenny Moore.
> Q. Okay.
> A. So he just pulled out a gun and shot.

Grant further testified:

> Q. Okay. What happened after that?

12

A.    [McChriston] ran and jumped off the fence, and he shot at him again. He fell, and he shot him again. So [McChriston] ran into the Safe House, and Kenny Moore ran behind him. But he stayed on the Greasy side and ran down behind him.

¶29.   Marilyn Skinner testified that she walked outside the club and saw Moore and McChriston fighting. She said:

And they was fighting, so it was by my truck. So I said, "Get off my GD truck." But they still fighting. They got back, you know, they moved back from my truck, and then they were just still fighting, and along, and Travis [Skinner] came, which is Kenny Moore's brother, and said, "That's enough," picked him up by the arm, and they walked towards the end of the road. I don't know how far they went, but that's what I saw.

Marilyn Skinner further testified:

Q.    Okay. Did you see Kenny come back at some time?
A.    Yes, I did.
Q.    What happened when he came back?
A.    I was standing next to the front door of my car, and Lucious, as they called him, his nickname, and he was standing right beside me, and he said, "They usually say Kenny Moore carries a gun." So when he said that –
Q.    Do you know Lucious' real name?
A.    James Griffin, I think.
Q.    Okay.
A.    And when he said that, I looked around, I seen Kenny Moore coming back up with his right arm up like this right here with a gun in his hand, and I took off running from the front of my truck, and I ran into my sister, and we hit the ground.

¶30.   Jermaine Young testified that he had seen a "little argument" between Moore and McChriston. Young also testified:

After they started arguing, they started fighting. After they got through fighting, Kenny Moore's brother comes out of the club and picked him up and tell him to leave him alone, that it was over with. It was like three or four more other guys telling them to leave it alone, so like five or ten minutes later, he come back up and start shooting [McChriston].

13

Young further testified that, after shooting and chasing McChriston, Moore sat on a car in the parking lot of the Safe House, as McChriston lay dying at the door of the Safe House.

¶31. Corey Johnson testified that Moore said he was going to retrieve his hat after the fight and that was when Moore shot McChriston.

¶32. This Court previously has said: "Whether a homicide is classified as a murder or manslaughter is ordinarily an inquiry to be made by the jury." *Hodge v. State*, 823 So. 2d 1162 (Miss. 2002). In the instant case, the jury was instructed on both manslaughter and murder. The jury considered the evidence and concluded that Moore committed murder. That conclusion is supported by the record in this case. Therefore, this issue is without merit.

## CONCLUSION

¶33. We find that no reversible error was committed by the trial court, and that the evidence supports the verdict of guilty. Therefore, Moore's judgment of conviction and sentence of life imprisonment in the custody of the Mississippi Department of Corrections is affirmed.

¶34. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISIONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**