IRVING, P.J.,
for the Court:
¶ 1. A Lauderdale County jury convicted William Antonio Avery of selling cocaine and felony fleeing. The circuit court sentenced Avery to sixty years for the sale-of-cocaine conviction and five years for the *332 felony-fleeing conviction. The circuit court ordered the sentences to run concurrently with each other, without eligibility for parole or probation, but consecutively to Avery’s sentences in Lauderdale County cause numbers 645-02 and 691-06, all in the custody of the Mississippi Department of Corrections (MDOC).
¶ 2. Following the circuit court’s denial of his motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, Avery appeals and presents several issues for review, which we have recast for clarity: (1) whether he was entitled to a mistrial; (2) whether he was entitled to a new trial based on the State’s violation of Rule 3.05 of the Uniform Rules of Circuit and County Court; (3) whether he was denied his right to compulsory process; (4) whether the circuit court and the prosecutor infringed upon his right not to testify; (5) whether the circuit court erred during post-trial proceedings; and (6) whether the cumulative effect of these errors deprived him of his right to a fair trial.
¶ 3. Finding no reversible error, we affirm.
FACTS
¶ 4. On March 30, 2010, the East Mississippi Drug Task Force and the Meridian Police Department arranged for Jason Hughes, a confidential informant, to buy drugs from Avery. Officers wired Hughes with an audio-visual recording device, and Hughes then went to meet Avery. Hughes purchased twenty dollars worth of crack cocaine from Avery, which he later turned over to the police who were waiting nearby. Immediately following the sale, the police attempted to arrest Avery. However, Avery fled in his vehicle, and a police pursuit ensued, which eventually resulted in Avery’s arrest. Avery was later tried and convicted of selling cocaine and felony fleeing.
¶ 5. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Mistrial

¶ 6. Avery offers two bases for his entitlement to a mistrial. First, he contends that he was entitled to a mistrial after Cynthia Cole, a prospective juror, stated during voir dire that she was aware of his case because, on the day of his arrest, she was “run off the road by him” during his flight from the police. Avery argues that Cole’s statement denied him his right to a fair trial. Second, Avery alleges that the circuit court erred in allowing law enforcement officers to testify that they knew him prior to his arrest for selling cocaine. Inexplicably, Avery further contends that the officers’ testimony concerning their prior knowledge of him somehow constitutes impermissible character evidence. He admits that he did not object at trial to the matters of which he now complains and asks that we review them under the plain-error doctrine.
¶ 7. “Under the doctrine of plain error, [an appellate court] can recognize obvious error which was not properly raised by the defendant on appeal, and which affects a defendant’s ‘fundamental, substantive right.’ ” Corbin v. State, 74 So.3d 333, 337 (¶ 11) (Miss.2011) (internal footnotes and citations omitted). The Mississippi Supreme Court has previously held that the right to a fair trial by an impartial jury is a fundamental right. Brawner v. State, 947 So.2d 254, 261 (¶ 17) (Miss.2006). Because Avery argues that Cole’s statement during voir dire deprived him of a fair trial by an impartial jury, we will review the issue for plain error.
*333 ¶ 8. The circuit court “must declare a mistrial when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant’s case.... ” Sipp v. State, 936 So.2d 326, 331 (¶ 7) (Miss.2006) (citing Tate v. State, 912 So.2d 919, 932 (¶ 41) (Miss.2005)). In the context of a venire member’s comments, “a defendant fails to show the necessary prejudice where the defense counsel fails to question jurors about an inappropriate comment, and the venire members have made general declarations that they could set aside them prejudices and reach a decision based on the evidence.” Ross v. State, 954 So.2d 968, 988 (¶ 32) (Miss.2007) (citations omitted).
¶ 9. Here, after Cole’s comment that Avery had run her off the road while he was fleeing from the police, she was removed from the venire panel. Following Cole’s removal, Avery’s counsel did not question the remaining prospective jurors about the effect of the comment, if any. However, the remaining prospective jury members declared that they would be able to reach a decision based solely on the evidence presented. Thus, Avery has failed to show that Cole’s comment prejudiced the jury. This issue is without merit.
¶ 10. Avery’s second basis for a mistrial is also without merit. While Officers Greg Lea, Karl Merchant, and Daniel Boyd testified that they knew Avery before the day of his arrest, they did not testify as to how they knew him. Specifically, the officers never testified to any additional crimes that Avery had committed, if any. Instead, the officers’ testimonies were offered to identify Avery and, therefore, did not constitute inadmissible character evidence.

2. Violation of Rule 3.05

¶ 11. Avery argues that he is entitled to a new trial because the State violated Rule 3.05 when it asked the venire to commit to a guilty verdict based on a hypothetical set of facts. Rule 3.05 provides, in pertinent part, that “[n]o hypothetical questions requiring any juror to pledge a particular verdict will be asked.” Avery admits that he failed to object to the prosecutor’s statements during voir dire and now relies on plain error. This Court has previously reviewed alleged violations of Rule 3.05 for plain error. Cotton v. State, 790 So.2d 235, 237-38 (¶¶ 2-3) (Miss.Ct.App.2001).
1112. During voir dire, the prosecutor stated:
And very briefly, ladies and gentlemen, I expect the facts will be that on the— that in March, the East Mississippi Drug Task Force had a man named Jason Hughes[,] who was working as what they call a confidential source, CS, or confidential informant, Cl; and that Mr. Hughes was tasked with making some undercover drug buys for them. Mr. Hughes was working for them because they had charged him with a drug crime, and he decided that he wanted to help himself out, so to speak, and they gave him that opportunity.
The agents wired him with audio and video surveillance equipment, and they sent him to make a buy. Where he made the buy was off King Road here in Lauderdale County where ... he met Mr. Avery[,] who was seated in his—in a pickup—an SUV I guess you’d say[—]at a residence there in the driveway. And walked up to him. They made an exchange of cash; that is, cash that was given to him by the narcotics officers in exchange for rocks or pieces of crack cocaine. Mr. Hughes left there to meet with the other agents. And in the *334 meantime, Agent Fairchild attempted to stop Mr. Avery to arrest him for the charge. And at that time, a high[-]speed chase through Lauderdale County took place....
Now, I say that for this reason-I give you all that information for this reason: If the law is substantially what I told you I thought it would be[,] and if you believe those facts that I’ve given you to be the truth beyond a reasonable doubt, is there anyone here for any reason at all who could not return a verdict of guilty on both of those counts against Mr. Avery? It’s okay. You can have a bad reason, but I just need to know that now.
¶ 13. Our supreme court has held that “[i]t is reversible error to ask a juror during voir dire to commit to returning a particular verdict.” Simmons v. State, 805 So.2d 452, 505 (¶ 147) (Miss.2001) (quoting Stringer v. State, 500 So.2d 928, 938 (Miss.1986)). However, reversal is not required unless “the natural and probable effect of the improper argument of the prosecuting attorney [creates] an unjust prejudice against the accused [and results] in a decision influenced by the prejudice so created.” Cotton, 790 So.2d at 238 (¶ 3) (quoting Davis v. State, 660 So.2d 1228, 1248 (Miss.1995)). Furthermore, reversal is not required “where the prosecutor does not ‘specifically’ request or require that the venire pledge a verdict one way or another in response to his question and comments during voir dire.” Id. at (¶ 4) (italics omitted) (citing Robinson v. State, 726 So.2d 189, 191-92 (¶ 6) (Miss.Ct.App.1998)).
¶ 14. The prosecutor’s statements were not a direct request for a verdict; thus, Rule 3.05 was not violated. The statements were aimed at determining whether the State would be held to a higher burden of proof than beyond a reasonable doubt and whether the prospective jury members harbored any biases that would influence their deliberations. Additionally, reversal is not required here because there is no evidence of prejudice against Avery resulting from the State’s comments. Accordingly, this issue is without merit.

3. Compulsory Process

¶ 15. Avery asserts that he was denied the right to confront the witnesses against him because he was not allowed to call MDOC General Counsel David Scott as a witness. However, as the State correctly points out, Avery’s argument relates to his right to call witnesses in his favor or his right to compulsory process. Prior to trial, the State filed a motion in limine to exclude Scott’s testimony as irrelevant. The circuit court granted the motion.
¶ 16. A circuit court’s decision to exclude or admit evidence will not be reversed unless the circuit court abused its discretion. Williams v. State, 54 So.3d 212, 213 (¶ 5) (Miss.2011). However, “when testimony is excluded at trial, a record must be made of the proffered testimony in order to preserve the point for appeal.” Abernathy v. State, 30 So.3d 320, 325 (¶ 19) (Miss.2010) (quoting Murray v. State, 849 So.2d 1281, 1289 (¶ 32) (Miss.2003)). Avery failed to make a proffer of Scott’s testimony after the circuit court excluded it. Without the proffer, this Court cannot determine whether Scott’s testimony would have been relevant or whether the circuit court erred in excluding the testimony. This issue is without merit.
A Avery’s Decision Not to Testify
¶ 17. First, Avery argues that the circuit court erroneously told him that his prior convictions could be inquired about on cross-examination. According to *335 Avery, the circuit court’s advisement had a “chilling effect” on his decision to testify. Second, Avery contends that the prosecutor impermissibly commented upon his failure to testify. Avery asserts that both of these errors entitled him to a new trial.

a. Admonition by the Circuit Court

¶ 18. “When a criminal defendant chooses to testify, his prior criminal convictions may—in limited circumstances—be introduced for impeachment purposes.” Sea v. State, 49 So.3d 614, 618 (¶ 15) (Miss.2010). However, before the State is allowed to cross-examine the defendant about his prior convictions, the circuit court must make an on-the-record finding that the probative value of the prior convictions substantially outweighs their prejudicial effect. See id. at (¶ 16). Furthermore, if the defendant chooses not to testify after the circuit court’s ruling, the defendant is procedurally barred from arguing on appeal that the court’s ruling had a “chilling effect” on his right to testify unless he proffers his proposed testimony. McClellan v. State, 34 So.3d 548, 553 (¶ 18) (Miss.2010).
¶ 19. Avery did not make a proffer of his testimony. Thus, this issue is procedurally barred. Procedural bar aside, this issue is also without merit. After the State rested, Avery requested a directed verdict, which the circuit court denied. Avery then informed the court that he did not intend to testify. Thus, the record clearly indicates that Avery made his decision not to testify prior to any comments from the circuit court regarding prior convictions. Accordingly, this issue is without merit.

b. Prosecutor’s Closing Argument

¶ 20. When reviewing a challenge to the prosecution’s opening and closing statements, an appellate court must consider “whether the natural and probable effect of the improper argument [creates] unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.” Anderson v. State, 62 So.3d 927, 939 (¶ 39) (Miss.2011) (quoting Tate v. State, 20 So.3d 623, 629 (¶ 14) (Miss.2009)). Moreover, while a direct reference to the defendant’s failure to testify is strictly prohibited, the State is, nevertheless, entitled to comment on the lack of a defense, and “such comment will not be construed as a reference to the defendant’s failure to testify by innuendo and insinuation.” Wright v. State, 958 So.2d 158, 161 (¶ 7) (Miss.2007) (citing Shook v. State, 552 So.2d 841, 851 (Miss.1989)).
¶ 21. During closing arguments, Avery’s counsel insisted that there was no proof that the transaction between Hughes and Avery was a drug transaction. During rebuttal, the State responded:
And you see that clearly on the video. What’s he selling? Where is there any evidence that it was, I don’t know, chewing gum? What could it be? What do you get for something that’s in the palm of your hand? The rules say, law says do not speculate; base your verdict on the evidence. Nobody came in here and said, [“] Oh, he was selling him, I don’t know, a pair of earrings, you know, a pair of little diamond earrings or something.[”] Did anybody say that? No. Well, Mr. Denson wants you to speculate that he was selling him some earrings. The problem with that is that there has to be some evidence of it, and there is none.
¶ 22. The State’s argument during rebuttal was not an improper reference to Avery’s failure to testify. The State was simply pointing out that Avery’s position— that the sale was not a drug transaction— was not supported by the evidence. There *336 was no direct reference to Avery’s failure to testify, and the argument did not imply that his failure to testify indicated guilt. Consequently, this issue is without merit.

5. Post-trial Proceedings Regarding Violation of Rule 615 of the Mississippi Rules of Evidence and Juror Misconduct

¶ 28. Following Avery’s trial and resulting guilty verdict, he discovered that the circuit court may have improperly communicated with Kim Watts, a juror, and influenced the jury’s decision. He filed a motion seeking a hearing on the matter. Prior to the commencement of the hearing, Avery requested that the witnesses be sequestered. The circuit court denied the request.

a. Rule 615 Violation

¶ 24. Rule 615 provides, in pertinent part: “At the request of a party[,] the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion.” Rule 615 assists the court in detecting testimony that is untruthful, and “it [restrains] witnesses [from] Tailoring’ their testimony to that of earlier witnesses.” Finley v. State, 725 So.2d 226, 283 (¶ 21) (Miss.1998) (quoting Douglas v. State, 525 So.2d 1312, 1316 (Miss.1988)). Under Rule 615, when a party asks the court to sequester the witnesses, the circuit court must comply. Id. at (¶ 22). Therefore, the circuit court erred when it failed to sequester the witnesses per Avery’s request. However, an appellate court “will not per se reverse a trial court for failing to order a mistrial or to exclude testimony after a witness[-]ex-elusion[-]rule violation. The resultant degree of prejudice to the defendant must first demonstrate that the trial court abused its discretion.” Id. (citing Douglas, 525 So.2d at 1317). Thus, Avery must show that he was prejudiced by the circuit court’s failure to invoke the rule. In an attempt to demonstrate prejudice, he alleges that Watts conformed her testimony to the court’s version of the facts. To determine what prejudice, if any, occurred as a result of the court’s communication with Watts, we find it necessary to first discuss the evidence that gave rise to Avery’s claim.

b. Juror Misconduct

¶ 25. Although there is a general disdain for probing jurors after the verdict for potential instances of extraneous influences, our supreme court has outlined the proper procedure for circuit courts to follow in suspected-juror-misconduct cases. Our supreme court has stated that:
Once an allegation of juror misconduct arises, then the next step is to consider whether an investigation is warranted. In order for the duty to investigate to arise, the party contending there is misconduct must make an adequate showing to overcome the presumption in this state of jury impartiality. Juror polling shall only be permitted by an attorney, outside the supervision of the court, upon written request.
At the very minimum, it must be shown that there is sufficient evidence to conclude that good cause exists to believe that there was in fact an improper outside influence or extraneous prejudicial information.
Moore v. State, 52 So.3d 339, 342-43 (¶ 14) (Miss.2010) (quoting Gladney v. Clarksdale Beverage Co., 625 So.2d 407, 418 (Miss.1993)).
¶ 26. The judge admitted that he had a conversation with Watts’s boss, Jamie Cater, on the night before the jury began deliberations. Cater owned a catering company and, according to the judge, needed Watts back at work to make dress *337 ing. The judge explained that he told Cater that he thought that the jury would begin deliberations the following morning and might have a decision by noon. Additionally, the judge related that the following morning, Watts approached him about needing to get back to work, and he told her that he thought that the jury would begin its deliberations that morning. He denied telling Watts that the jury should have a decision by noon.
¶ 27. Watts testified that, on the morning in question, she was the last juror to arrive at the courthouse. As the bailiff escorted Watts to the jury room, she mentioned to the judge that she needed to get back to work and start making dressing. Watts further testified that the judge did not respond to her comment about needing to get back to work and also did not say that the jury should have a decision by noon. Watts could not recall if anyone else heard her comment to the judge about needing to get back to work.
¶ 28. Elaine Moss, another jury member, testified that she remembered Watts coming into the jury room and saying that her boss had spoken with the judge and that the judge said that they should be finished by noon. Moss explained that she did not understand what Watts’s statement meant and that the statement did not influence her deliberations. Additionally, Moss testified that she could not remember if other jurors were present when Watts made her statement, and she did not talk to anyone about Watts’s statement.
¶ 29. Cater testified that, the night before the jury began its deliberations, she saw the judge while she was at dinner. She explained to the judge that she was more tired than usual because one of her employees was serving as a juror. According to Cater, the judge told her that he thought the case would be over by noon the following day. Cater testified that she did not contact Watts after her conversation with the judge, but she did tell her staff that the judge thought that Watts would be returning to work soon.
¶ 30. Margaret Brown, Avery’s mother, testified that she remembered seeing Watts approach the judge and say, “I got your message last night.” Brown explained that the judge replied, “What was that?” and that Watts responded, “That this Court — that court will be over by 12:00 and to bring a pan of dressing.” Brown testified that Watts giggled after the comment about the dressing. Shawa-na Avery, Avery’s wife, testified that she heard the same conversation as Brown.
¶ 31. Based on the above, Avery has failed to present sufficient evidence to overcome the presumption of jury impartiality. He has also failed to establish by clear evidence that Watts and the circuit judge engaged in improper communication. Consequently, he has not shown any prejudice as a result of the circuit court’s refusal to sequester the witnesses. This issue is without merit.

6. Cumulative Error

¶ 32. Finally, Avery asserts that the cumulative errors in this case require reversal of his convictions and remand for a new trial. However, as we have found no reversible error, this issue is without merit.
¶ 33. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, SALE OF COCAINE, AND SENTENCE OF SIXTY YEARS; COUNT II, FELONY FLEEING, AND SENTENCE OF FIVE YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY BUT CONSECUTIVELY TO THE SENTENCES IN LAUDERDALE COUNTY *338 CAUSE NUMBERS 645-02 AND 691-06, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., NOT PARTICIPATING.