915 So.2d 521 (2005)
Derek Brandon CONWAY, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02807-COA.
Court of Appeals of Mississippi.
November 29, 2005.
*523 Ray T. Price, Hattiesburg, Jonathan Michael Farris, attorneys for appellant.
Charles W. Maris, Deirdre McCrory, Jackson, Jim Hood, attorneys for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. Derek Brandon Conway was convicted of murder in the Forrest County Circuit Court. Conway appeals, raising the following issues:
I. WHETHER THE COURT ABUSED ITS DISCRETION IN DENYING THE MOTION TO EXAMINE AND TEST THE PHYSICAL EVIDENCE
II. WHETHER THE COURT ERRED IN DENYING CONWAY'S MOTION FOR A CONTINUANCE
III. WHETHER THE COURT ERRED IN ALLOWING INTO EVIDENCE THE EDITED VIDEOTAPE FROM THE CARWASH
IV. WHETHER THE JURY VERDICT IS CONTRARY TO THE WEIGHT OF THE EVIDENCE
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. Derek Brandon Conway was a friend of Joseph Jansen. Jansen became aware that Conway and his wife, Christina, had separated. Heather Essary, an ex-girlfriend of Conway's, contacted Conway and told him that Christina and Jansen were using Essary's cell phone to communicate with each other. Conway called Christina and accused her of seeing Jansen, an accusation Christina denied. Conway told Christina that he would fight Jansen when Jansen returned from Alabama. Jansen called Conway and asked him why he was being accused of sleeping with Christina. Conway said nothing in reply, and the conversation was ended.
¶ 4. After the telephone conversation, many of Conway's friends informed him that Jansen and Christina were sleeping together. Conway again called Jansen and accused him of sleeping with his wife. Jansen again denied the allegations. According to Jansen, they talked the situation over and Conway eventually told Jansen that he believed him.
¶ 5. On the afternoon of July 4, 2002, Conway and two of his friends, Michael Smith and Paul Ingram, went to Conway's mother's house. They ingested crystal methamphetamine and remained at Conway's mother's house until the evening. At approximately 8:00 p.m. Conway, Smith, and Ingram drove to Bud's and Sud's Car Wash to wash Smith's car. Next to Bud's and Sud's is the Kangaroo *524 store. Ingram was shopping for something to drink. As Conway and Smith were vacuuming the car, Conway saw Anthony Thames' truck pull up at the Kangaroo store. Thames was driving, Kenneth Ray Mooney was in the passenger's seat, and Jansen was in the middle.
¶ 6. Ingram came out of the Kangaroo store and spoke to Jansen. Ingram told Jansen that Conway and Smith were at the car wash. Jansen, Thames, and Mooney drove to the car wash and stopped in front of Conway. The three of them began staring at Conway and laughing.
¶ 7. Conway reached in Smith's car, took out a mag light and walked over to the truck. Jansen tried to get out of the truck, but Mooney would not let him out. Conway hit Mooney in the head with the mag light twice.
¶ 8. Jansen and Thames testified that none of the occupants in the truck had a weapon. Conway testified that he attacked Mooney because he "was scared that they were all fixing to do something to him" and that "he didn't give them a chance" for the boys in the truck to harm him. According to Conway, Mooney attempted to strike him in the head with a beer bottle. No other witnesses testified that Mooney displayed any acts of physical aggression.
¶ 9. After Conway hit Mooney in the head with a mag light, Conway and Jansen argued about whether Jansen was sleeping with Conway's wife. Conway pulled out a gun from his back pocket and shot Mooney. Conway then ran back to Smith's car and drove away, saying, "I didn't mean to; I'm sorry." Thames and Jansen took Mooney to Forrest General Hospital, where he died later that night. Conway turned himself in to the police the next day. The jury found Conway guilty of first degree murder.

ANALYSIS

I. WHETHER THE COURT ABUSED ITS DISCRETION IN DENYING THE MOTION TO EXAMINE AND TEST THE PHYSICAL EVIDENCE
¶ 10. Five days before trial, the circuit court judge heard oral arguments regarding Conway's attorney's motion for testing of physical evidence and a continuance. Conway wanted an opportunity to examine the fingerprints on the beer bottle and mag light. Conway's defense was that Mooney was the initial aggressor and that Conway was acting in self-defense. The prosecution argued that the fingerprints were irrelevant to the issue of self-defense. All witnesses agreed that Conway was holding a mag light and that Conway struck Mooney with the mag light. Thames and Jansen admitted that Mooney had taken "a couple of swallows" from the beer bottle before Conway came to the truck. The prosecutor argued that the fingerprints on the bottle would neither help prove nor disprove Conway's claim that Mooney tried to strike Conway in the head with the beer bottle.
¶ 11. The prosecutor further argued that the presence of fingerprints on the objects was not relevant because the events leading to the shooting were captured on videotape. Conway's attorney received a copy of the original surveillance tape from Bud's and Sud's, which was unviewable. The State enhanced the surveillance tape in order to make it viewable. The State provided a copy of the enhanced videotape to Conway's attorney at 5:00 p.m. the following afternoon.
¶ 12. With respect to the motion to test physical evidence, the judge ruled, "If there is anything contained in that video that you think you need to review this motion, I'll hear that Friday morning. But, other than that, I'm going to deny *525 your motion." Conway's attorney did not request a continuance after he viewed the tape.
¶ 13. The circuit court has considerable discretion in matters pertaining to discovery, and its exercise of discretion will be set aside only if there is an abuse of discretion. Gray v. State, 799 So.2d 53, 60(¶ 26) (Miss.2001). The circuit court judge agreed with the prosecutor that the presence of fingerprints on the beer bottle and mag light were irrelevant as to whether Conway acted in self-defense. Only relevant evidence is admissible. M.R.E. 401. The question of whether evidence is relevant is within the discretion of the trial judge. Federal Land Bank of Jackson v. Wolfe, 560 So.2d 137, 140 (Miss.1989). The circuit court judge did not abuse his discretion in denying Conway's motion for discovery.

II. WHETHER THE COURT ERRED IN DENYING CONWAY'S MOTION FOR A CONTINUANCE
¶ 14. Conway's attorney filed a motion for continuance five days before trial. The indictment in this case was returned on May 6, 2003. On June 24, 2003, the court set a trial date for October 13, 2003. Conway's attorney requested a continuance on the grounds that he was unprepared for trial. Conway's attorney claimed that the lack of preparedness was justified because he had recently completed another murder trial. The judge denied the request.
¶ 15. A circuit court judge has wide discretion in deciding whether to grant a continuance, and the denial of a motion for continuance will not be reversed absent a showing of substantial prejudice or manifest injustice. Simmons v. State, 805 So.2d 452, 484(¶ 72) (Miss. 2002). The moving party bears the burden of establishing prejudice. Wilson v. State, 755 So.2d 2, 5(¶ 11) (Miss.Ct.App. 1999). Conway offers no proof that his attorney at trial was unprepared or that he was prejudiced from his attorney's lack of preparation. This issue is without merit.

III. WHETHER THE COURT ERRED IN ALLOWING INTO EVIDENCE THE EDITED VIDEOTAPE FROM THE CARWASH
¶ 16. The original surveillance tape from Bud's and Sud's was unclear. The video consisted of all activity that happened at Bud's in Sud's in the twenty-four hours prior to the shooting. The unedited video was admitted into evidence based upon the testimony of Officer Steven Pazos, who was called to Bud's and Sud's to investigate the scene after the shooting. He collected the surveillance tape and verified that the tape showed the scene in question. Officer Pazos then placed the tape in the evidence room at the Hattiesburg Police Department. The State admitted the unedited tape into evidence through Officer Pazos' testimony without objection from Conway.
¶ 17. The State's second witness was Detective David Clayton of the Hattiesburg Police Department. He testified that he retrieved the original tape from the evidence room at the Hattiesburg Police Department and drove to the Biloxi Police Department. In Biloxi, a technician copied only the relevant portions of the videotape and used an editing and enhancement process to clear up the tape and slow it down. Detective Clayton testified that the tape never left his sight while he was in Biloxi and that he was physically present when the tape was being developed into a more readable tape. Detective Clayton then brought the tape back to the Hattiesburg Police Department. The State introduced the edited tape into evidence through Detective Clayton. Conway objected *526 to the admission of the second tape because Detective Clayton was not the person who actually made or produced the second tape. The trial court overruled Conway's objection and allowed the tape into evidence.
¶ 18. A document or photograph must be authenticated prior to its admission into evidence. M.R.E. 901. The same standards used in determining admissibility of photographs are applicable to videotapes. Davis v. State, 767 So.2d 986, 996(¶ 24) (Miss.1996). Conway claims that the edited videotape was inadmissible because Detective Clayton was not present on the night the shooting occurred and because he was not the technician who made the second tape.
¶ 19. M.R.E. 901 lists, by way of illustration only, examples of authentication or identification conforming with the requirements of the rule. One way a document can be admitted into evidence is by testimony that a matter is what it is claimed to be. M.R.E. 901(b)(1). When a videotape is admitted into evidence through a witness, it must be authenticated by someone who can testify that the events on the tape accurately depict the transaction as it occurred on the day in question. Seals v. State, 869 So.2d 429, 433(¶ 13) (Miss.Ct.App.2004) (citing Wells v. State, 604 So.2d 271, 277 (Miss.1992)). Detective Clayton was not at the accident scene and never indicated that he watched the first videotape. In addition, he was not the technician who made the edited tape. The State failed to prove that Detective Clayton had sufficient knowledge of the crime scene to be able to testify that the edited videotape accurately depicted the events on the day in question.
¶ 20. "No trial is free of error; however, to require reversal the error must be of such magnitude as to leave no doubt that the appellant was unduly prejudiced." Busick v. St. John, 856 So.2d 304, 308(¶ 9) (Miss.2003) (citing Davis v. Singing River Elec. Power Ass'n, 501 So.2d 1128, 1131 (Miss.1987); Parmes v. Illinois Cent. Gulf R.R., 440 So.2d 261, 268 (Miss. 1983)). When the weight of the evidence against the defendant is overwhelming, such error is harmless. Moss v. State, 727 So.2d 720, 725-26(¶ 24) (Miss.Ct.App.1998). Based on this Court's review of the record and the evidence against Conway, we find that the evidence against Conway is overwhelming.

IV. WHETHER THE JURY VERDICT IS CONTRARY TO THE WEIGHT OF THE EVIDENCE
¶ 21. Conway claims that he shot Mooney in self-defense because he was justifiably afraid that Jansen, Mooney and Thames drove to Bud's and Sud's to start a fight with him. However, Conway himself admitted that he did not give the people in the truck a chance to do harm to him. There was no evidence that anyone in the truck had a weapon. Conway also claims that Mooney attempted to hit him in the head with a beer bottle. No other witnesses verified that Mooney swung a bottle at Conway or showed any type of aggression. Dr. Steven Hayne, the physician who performed the autopsy on Mooney, testified that the trajectory of the bullet was consistent with the weapon having been fired while Mooney was in a seated and upright position. The jury is the sole judge of the credibility of the witnesses. Kolberg v. State, 704 So.2d 1307, 1311(¶ 15) (Miss.1997). The jury was within its discretion in finding that Conway did not act in self-defense.
¶ 22. The State submitted a jury instruction allowing the jury to convict Conway on the theory of depraved heart murder, which allowed the jury to convict *527 if Conway committed an imminently dangerous act that showed a disregard for human life. Miss.Code Ann. 97-3-19(1)(b) (Rev.2000). Conway admitted that he took crystal methamphetamine earlier that evening, and he testified that the drug made him paranoid. Conway hit Mooney in the head with a mag light twice without saying a word to him. After Conway and Jansen argued about whether Jansen was sleeping with Conway's wife, Conway immediately pulled a loaded gun and shot Mooney. Such an act is a depraved heart act. In his closing argument, the prosecutor stated: "And we've all learned that you never point a gun at someone why? Because it's imminently dangerous to that person because why? Even unloaded guns have killed people, and that is the act. That is the depraved heart act." The facts of this case show that Conway committed an imminently dangerous act that showed a disregard for human life.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, IRVING, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.