# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01240-COA

HERMAN JACKSON JR. A/K/A HERMAN                                          APPELLANT
JACKSON III A/K/A MAIN A/K/A MAIN LOVE
A/K/A HERMAN JACKSON

v.

STATE OF MISSISSIPPI                                                      APPELLEE

DATE OF JUDGMENT:                08/18/2015
TRIAL JUDGE:                     HON. ALBERT B. SMITH III
COURT FROM WHICH APPEALED:       COAHOMA COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                 BY: BENJAMIN ALLEN SUBER
                                     GEORGE T. HOLMES
                                     JUSTIN T. COOK
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:               BRENDA FAY MITCHELL
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     AFFIRMED - 07/17/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., BARNES AND FAIR, JJ.

### BARNES, J., FOR THE COURT:

¶1.     A Coahoma County jury convicted Herman Jackson of possession of marijuana of more than thirty grams but less than one kilogram with intent to sell, transfer, barter, distribute, or dispense. The trial court sentenced him to ten years in the custody of the Mississippi Department of Corrections (MDOC) as a subsequent drug offender[1] and as a

---

[1] Jackson was previously convicted by a jury for possession of cocaine and marijuana in February 2007. He appealed pro se, raising many of the same issues. This Court affirmed

non-violent habitual offender.  Jackson now appeals, raising several issues through his counsel and pro se.[2]  Finding no error, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     In June 2013, a confidential informant (CI) told narcotics agents with the Clarksdale Police Department that Jackson possessed a large amount of marijuana and that he was selling it out of his home at 343-B Bolivar Street.  Officers considered the CI reliable because the informant had provided information in numerous prior cases and was instrumental in helping to obtain prior convictions.  Officers presented the CI's information to a judge and obtained a warrant to search Jackson's house.  Officers then conducted "loose surveillance"[3] on the house for approximately twenty-four hours, during which time Jackson did not enter or leave the house.  Shortly thereafter, Jackson was seen driving within three blocks of his home.  Knowing there was an active warrant for Jackson's arrest due to unpaid municipal fines,[4] officers stopped him and transported him to 343-B Bolivar Street. Officers

---

his conviction and sentence in *Jackson v. State*, 1 So. 3d 921 (Miss. Ct. App. 2008).

[2] On appeal, Jackson is represented by the Office of State Public Defender, but he also filed a pro se initial brief and reply brief.  Rule 28(b) of the Mississippi Rules of Appellate Procedure authorizes an appellant in a criminal appeal to file a pro se supplemental brief and raise "issues not addressed by counsel, but such issues must be based on the record."

[3] Captain Bridges testified that "loose surveillance" means the officers were "staying in the area, but not completely visible the whole time."  He explained that they cannot sit close to a residence in a high-crime area because it will disclose that the "narcs are looking at my house"; therefore, the officers move around while watching the residence.

[4] Jackson, pro se, claims officers created a "false warrant" to cover up an illegal traffic stop, but a valid warrant for overdue fines is included in the record.  He also claims the police report was falsified, but there is no legitimate evidence to support this contention.

2

informed Jackson they were going to search his home. When asked for a key, Jackson stated he did not have one.[5] Officers therefore kicked the door in and conducted a thorough search of the home while Jackson remained in the patrol car.

¶3. Even though the home was modest, numerous surveillance cameras were mounted outside to record the house's exterior area. Inside, there was a digital video recorder (DVR) connected to the video-surveillance system, showing the exterior of the house on four split screens on a monitor in real-time. On a living-room sofa, two clear plastic baggies containing a green leafy substance were found, as well as a significant amount of the same substance and some packaging materials in the bedroom on a dresser. Officers also seized from the bedroom a box of sandwich baggies, a set of digital scales, and the DVR system found in the closet. Additionally, they recovered several utility bills that were addressed to Jackson at this address, and Jackson's social-security card, which was lying on a living-room table. A ceramic container on top of the refrigerator in the kitchen was filled with sandwich baggies and a green leafy substance. Female clothing and cosmetics were also observed in the home, indicating a female apparently lived at the residence; however, a male's pair of pants was also observed and photographed.

¶4. After the search, Jackson was transported to the Clarksdale Police Department and booked. Jackson requested to use the telephone and made three calls, all of which were recorded without his knowledge and later admitted into evidence at trial.[6] During the calls,

---

[5] Jackson maintained the house is not his residence despite evidence to the contrary.

[6] All incoming and outgoing telephone calls at the station are recorded.

Jackson made several statements indicating the house that the officers searched and the drugs were his. While officers did not witness the telephone calls, one officer identified Jackson's voice from the recordings.

¶5.     A Coahoma County grand jury indicted Jackson for possessing more than thirty grams but less than one kilogram of marijuana with intent to distribute, in violation of Mississippi Code Annotated section 41-29-139(b)(1) (Rev. 2013).[7] He was also indicted as a subsequent offender under Mississippi Code Annotated section 41-29-147 (Rev. 2013) and as a non-violent habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015).[8]

¶6.     At trial, narcotics officers testified to the amount of marijuana seized. Eric Frazure, a forensic chemist at the Mississippi Crime Lab accepted as an expert in drug analysis, testified that based on his testing, the green leafy substance seized was marijuana. The jury was instructed on both the charged offense and the lesser-included crime of simple possession of marijuana in an amount of more than 250 grams but less than 500 grams. The jury found Jackson guilty as charged, and he was sentenced to ten years in the custody of the

[7] At one point, Jackson, pro se, disputes the statute under which he was charged. However, we note that the statute was amended and the changes became effective in July 2017. Jackson was charged and convicted under the statute as it was written in December 2013, which may be the source of his confusion. Jackson also claims the district attorney produced false evidence to indict and convict him, which will be discussed in the third issue.

[8] The trial court granted the State's request to amend Jackson's indictment, permitting him to be sentenced under either habitual offender statute section 99-19-81 or -83 because Jackson had been convicted of a crime of violence—two counts of aggravated assault in 1996. Jackson was ultimately sentenced under section 99-19-81, thereby avoiding a mandatory life sentence.

MDOC.

¶7. Additional facts will be discussed as they relate to the issues raised.

**ANALYSIS**

¶8. On appeal, counsel for Jackson raises six issues. Jackson's pro se brief supplements his appellate counsel's arguments and raises four more separate issues. We shall discuss each in turn, consolidating where issues overlap.

### I. Police Department Telephone Calls

¶9. Jackson argues the trial court erred in denying his motion to suppress recordings of three telephone calls he made at the Clarksdale Police Department, which were admitted into evidence, because he claims the State's attempts to authenticate the recordings were insufficient. During these telephone calls, Jackson identified the house and the marijuana as his property. Jackson claims there was no evidentiary foundation for the conversation because no one at the police department testified that the machinery was in proper working order while recording, and no one was listening to the conversation to make sure it was accurately recorded.

¶10. The standard of review for the admissibility of evidence is abuse of discretion. *Stromas v. State*, 618 So. 2d 116, 119 (Miss. 1993). Evidence must be relevant and properly authenticated to be admitted at trial. *Id.* at 118 (citing M.R.E. 401 & 901). "Authentication of evidence requires the offering party to lay a proper foundation." *Riley v. State*, 126 So. 3d 1007, 1009 (¶7) (Miss. Ct. App. 2013) (quoting *Wilson v. State*, 775 So. 2d 735, 740 (¶11) (Miss. Ct. App. 2000)). The applicable version of Mississippi Rule of Evidence

901(a) provides that authentication is sufficient when it "support[s] a finding that the matter in question is what its proponent claims." One means of authenticating evidence "is through the testimony of a witness with knowledge 'that [an item] is what it is claimed to be.'" *Riley*, 126 So. 3d at 1009 (¶7) (quoting M.R.E. 901(b)(1)). Further, the applicable Rule 901(b) gives several examples of evidence that can be used for authentication in different circumstances:

> (5) Voice Identification. Identification of a voice, *whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.*
>
> (6) Telephone Conversations. Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (A) in the case of a person, circumstances, including self-identification, show the person answering to be the one called
>
> . . . .
>
> (9) Process or System. Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result.

M.R.E. 901(b)(5)-(6), (9) (emphasis added).

¶11. The State satisfied the authentication requirement through the testimony of Officer Carl Hinton, who testified he was familiar with Jackson's voice on the recording, and identified it as his. Jackson argues this was insufficient to lay a proper foundation, but we disagree. Officer Hinton transported Jackson to the station and booked him, then Officer Hinton allowed Jackson to make three telephone calls. While Officer Hinton did not overhear the calls, he and Jackson were the only individuals in the area when the calls were

6

made, and he observed Jackson ending a call. Further, Cindy Doss, an administrator with the police department, testified that all incoming and outgoing telephone calls at the police station are recorded. She explained the process for obtaining a copy of the recordings and that she made a copy of Jackson's telephone calls as requested by the investigators.

¶12. In support of his argument, Jackson cites *Conway v. State*, 915 So. 2d 521, 526 (¶19) (Miss. Ct. App. 2005), where this Court found an edited videotape was admitted without proper authentication because the officer who testified to authenticate the footage never actually witnessed the crime scene. However, the admission of the videotape was deemed harmless error due to the overwhelming evidence of the defendant's guilt. *Id.* at (¶20). We find *Conway* is inapplicable here because Officer Hinton's identifying testimony was based on information within his knowledge—Jackson's voice—whereas in *Conway* the video was of the crime scene and never viewed by the authenticating officer.

¶13. We find the State's citation to *Broadhead v. State*, 981 So. 2d 320 (Miss. Ct. App. 2007) analogous to this situation. There, the defendant argued that the admission of her recorded phone call from jail was improperly admitted because the State's authentication of the recordings was insufficient. *Id.* at 326 (¶24). Similar to this case, the State authenticated the recording through an officer testifying he was familiar with the defendant's voice and identified her voice in the recording. *Id.* at 327 (¶25). The officer also testified he was familiar with the phone system that recorded the inmates' calls. *Id.* Here, Officer Hinton identified Jackson's voice, and Doss testified about the process for obtaining copies of the recorded phone calls. The *Broadhead* court also cited *Conway* as inapplicable because an

officer was familiar with the defendant's voice. *Id.* at (¶26). Furthermore, we are not persuaded by Jackson's argument that a telephone-call recording system is analogous to an Intoxilyzer machine or a radar device.

¶14. Additionally, in his pro se brief, Jackson argues that the recordings should have been suppressed because they were obtained in violation of the Fourth Amendment. However, this argument is procedurally barred because it was not presented before the trial court. *See Bates v. State*, 879 So. 2d 519, 522 (¶7) (Miss. Ct. App. 2004). Regardless of the procedural bar, the issue is without merit. A person may only challenge an intrusion to his or her right to privacy where the person "would objectively and reasonably expect privacy." *Pierre v. State*, 607 So. 2d 43, 52 (Miss. 1992) (citing *Katz v. United States*, 389 U.S. 347, 351-52 (1967)). In *Pierre*, there was no reasonable expectation of privacy under the Fourth Amendment for a telephone conversation by a defendant in custody, when she confessed to a crime while on the phone with her brother in an open room as police officers sat nearby. *Id.* at 51-52. "The expectations of privacy of an individual taken into police custody" are necessarily diminished. *Maryland v. King*, 569 U.S. 435, 462 (2013). The same principle would apply here. Jackson did not have a reasonable expectation of privacy for his telephone calls because he was in custody and being monitored.

¶15. Relatedly, Jackson argues that Mississippi Code Annotated section 41-29-507 (Rev. 2013) was violated. This code section is part of the Interception of Wire or Oral Communications Act, and provides that "[n]o person, agency . . . or political subdivision of the state, other than the Bureau of Narcotics, is authorized . . . to own, possess, install,

8

operate or monitor an electronic, mechanical or other device." However, the bureau "may be assisted by an investigative or law enforcement officer in the operation and monitoring of an interception . . . [of communication], provided an agent of the Bureau of Narcotics is present at all times." Miss. Code Ann. § 41-29-509(1) (Rev. 2013). This specific issue was also not raised below, and accordingly, is procedurally barred. *Bates*, 879 So. 2d at 522 (¶7). In spite of the bar, again, Jackson would not have a reasonable expectation of privacy while in custody using a jailhouse telephone. Section 41-29-501 defines the terms of the Act. "'Oral communication' means an oral communication uttered by a person exhibiting an expectation that the communication is not subject to interception *under circumstances justifying that expectation.*" Miss. Code Ann. § 41-29-501(j) (Rev. 2013).

¶16. In *United States v. Van Poyck*, 77 F.3d 285 (9th Cir. 1996), the defendant, upon arrival at a detention center, called several friends and made incriminating statements. The detention center recorded and selectively monitored all inmate telephone conversations and required inmates, upon arrival, to sign a form consenting to the monitoring. Signs were also posted above the telephones stating the telephones would be monitored. *Id.* at 287. The defendant challenged the detention center's recording policy under the Fourth Amendment. *Id.* at 290. The United States Court of Appeals for the Ninth Circuit stated that "[t]he Fourth Amendment is not triggered unless the state intrudes on an area 'in which there is a constitutionally protected reasonable expectation of privacy.'" That expectation "exists only if (1) the defendant has an 'actual subjective expectation of privacy' in the place searched and (2) society is objectively prepared to recognize that expectation." *Id.* at 290 (quoting

9

*United States v. Davis*, 932 F.2d 752, 756 (9th Cir. 1991)). The Ninth Circuit found that neither expectation existed, holding "any expectation of privacy in outbound calls from prison is not objectively reasonable and . . . the Fourth Amendment is therefore not triggered by the routine taping of such calls." *Id.* at 290-91. *See United States v. Gangi*, 57 F. App'x 809 (10th Cir. 2003) (unpublished) (following *Van Poyck*, 77 F.3d at 290-91 for the proposition that the Fourth Amendment is not triggered by jail-telephone calls when no sign is posted over telephone because there is no objective expectation of privacy in outbound calls from prison); *United States v. Robinson*, No. 08-60179-CR, 2008 WL 5381824, at *14 (S.D. Fla. Dec. 19, 2008) (following *Van Poyck*, 77 F.3d at 290-91 for the proposition that there is no expectation of privacy for a defendant's voluntary jail-telephone calls when notice is posted near the telephone that calls are recorded and monitored); *State v. Martin*, No. 2017-UP-246, 2017 WL 4641406, at *2 (S.C. Ct. App. 2017) (following *Van Poyck*, 77 F.3d at 290-91 for the proposition that the defendant had neither subjective nor objective expectation of privacy when jail-telephone calls were monitored; he was notified of it; and prisoners have severely curtailed privacy rights to preserve jail security). Here, Jackson claims he was not advised that his telephone calls would be recorded; therefore, he might present a question of whether he had a subjective expectation of privacy; however, under *Van Poyck*, we find that such expectation is not justified under these circumstances.

¶17.  Further, Jackson has not proved that the Act applies to the Clarksdale Police Department as Mississippi Code Annotated section 41-29-535 (Rev. 2013) exempts "a subscriber to a telephone operated by a communication common carrier and who intercepts

a communication on a telephone to which he subscribes." The Clarksdale Police Department may well be the "subscriber" to the telephone at issue.

¶18. Accordingly, the trial court did not abuse its discretion by admitting the properly authenticated telephone recordings into evidence.

## II. Search Warrant

¶19. Jackson claims the trial court erred in denying Jackson's motion to suppress evidence obtained through an unlawful search warrant. He argues that the warrant was based on unreliable facts from the CI, the information was stale, and the magistrate issuing the warrant was not neutral. We shall discuss each argument in turn.

### A. Unreliable Facts

¶20. At the hearing on his motion to suppress, Jackson argued that the search warrant was invalid because it was based on unreliable facts and circumstances in violation of the Fourth Amendment. Jackson also argued that the affidavit of underlying facts and circumstances was deficient as it inadequately described the property to be seized.

¶21. This Court reviews the admission or exclusion of evidence under an abuse of discretion. *Cooper v. State*, 93 So. 3d 898, 900 (¶6) (Miss. Ct. App. 2012). The review for the issuance of a warrant is not de novo, but "whether the judge had a substantial basis for concluding that probable cause existed. The standard for determining the existence of probable cause for a search warrant based on an informant is the totality of the circumstances." *Id.* (citations and internal quotation marks omitted). "In determining whether there was a substantial basis for probable cause, we look at both the 'facts and

11

circumstances set forth in the affidavit for the search warrant and sworn oral testimony presented to the issuing judge.'" *Id.* at 901 (¶8). The "substantial basis" standard is met "where the affidavit contains a statement that an officer has successfully used a confidential informant to prosecute criminal allegations in the past," and the "affidavit contains corroborating evidence to show a confidential informer is truthful and reliable." *Roebuck v. State*, 915 So. 2d 1132, 1137 (¶15) (Miss. Ct. App. 2005).

¶22. In this case, the search warrant's affidavit of facts and underlying circumstances stated:

INTRODUCTION

There is probable cause to believe that there is [m]arijuana located in the residence of 343 Bolivar Street duplex B, in Clarksdale, Coahoma County, Mississippi. A very . . . reliable confidential informant observed a quantity of [m]arijuana at 343 Bolivar Street duplex B.

DETAILS

A very reliable confidential informant went to 343 Bolivar Street duplex B and observed a quantity of [m]arijuana. Present at the residence was Herman Jackson Jr; A.K.A. "Main Love." This informant has provided information and assistance for more than four (4) years, and his/her information has resulted in numerous drug seizures and several arrests on drug charges and numerous convictions in State Courts.

The document was prepared and sworn to on June 18, 2013, by Officer Ricky Bridges, Captain of the Narcotics Special Operations Unit, and Sergeant Gary Smith of the same unit in front of the Clarksdale municipal court judge.

¶23. Jackson claims the reliability of the CI was not corroborated by an independent reliable source. We disagree. The documents presented in support of the search warrant

12

contained statements sufficient to show the CI was "very reliable." Further, at the hearing, Captain Bridges testified that he had used the CI for several years, and the information was "always reliable," leading to several arrests. Under the totality of the circumstances, there was sufficient evidence of the CI's veracity, and the trial judge had a substantial basis for concluding that probable cause existed.

¶24. Regarding whether the affidavit sufficiently described the property to be seized, the Mississippi Supreme Court "has repeatedly held descriptions in search warrants are sufficient if the places and things to be searched are designated in such a manner that the officer making the search may locate them with reasonable certainty." *Williams v. State*, 583 So. 2d 620, 624 (Miss. 1991). "For property other than what is illicit or contraband, the thing or things to be seized must be described with some particularity." *Sutton v. State*, 238 So. 3d 1150, 1157 (¶24) (Miss. 2018) (quoting *Conn v. State*, 251 Miss 488, 496, 170 So. 2d 20, 24 (1964)). Here, the affidavit stated the search would be for marijuana, and items such as packaging, notes, weapons, calendars, utility bills, currency, and other particular things too numerous to list here. This argument is without merit.

### B. Staleness

¶25. Additionally, Jackson argues pro se that the search warrant was stale because the supporting affidavit did not include the time or date that the CI observed marijuana at the residence, or when the CI related the information to the affiants—Captain Bridges and Sergeant Smith.

¶26. The State responds that this issue is procedurally barred because it was not raised

before the trial court. *See Bates*, 879 So. 2d at 522 (¶7). However, it was. While the term "stale" was not used at the suppression hearing, defense counsel argued that the warrant was invalid because the time and date the drugs were observed and the information was relayed to the officers was unknown, which is the same argument Jackson raises now on appeal. Although the issue is not barred, we find it without merit.

¶27. Jackson is correct that staleness of information may be a defect in probable cause for a search warrant. *See Flake v. State*, 948 So. 2d 493, 496 (¶9) (Miss. Ct. App. 2007). "When a warrant supports a search, the reviewing court must [e]nsure that the issuing magistrate had a substantial basis for concluding that probable cause existed." *Jones v. State*, 724 So. 2d 427, 429 (¶8) (Miss. Ct. App. 1998) (citing *Pipkins v. State*, 592 So. 2d 947, 949 (Miss. 1991)).

> Probable cause is a practical inquiry, a function of the totality of the circumstances in each particular case. . . . Objectivity is the key, for the information supporting probable cause must be such *that would lead a reasonably competent issuing magistrate to believe that evidence will be found*. The statements in the affidavit as well as any sworn oral testimony presented to the issuing magistrate will be considered.

*Id.* (emphasis added) (citing *Williams*, 583 So. 2d at 622). "The determination of factual currency in the affidavit for a search warrant [is] but one factor in the totality of the circumstances for establishing the existence of probable cause." *Flake*, 948 So. 2d at 496 (¶9).

¶28. During the suppression hearing, defense counsel recounted information from the Clarksdale Police Department Report, which is not in the record, and admitted that this same information was presented to the Clarksdale municipal judge to secure the search warrant.

14

On June 18, 2013, Captain Bridges and Sergeant Smith "received credible information from a reliable confidential informant that Jackson was in possession of *several pounds* of marijuana" that "was *being stored* at 343B Bolivar Street, known to be Jackson's residence." (Emphasis added.)

¶29. The key inquiry is whether the magistrate had a substantial basis to believe marijuana would be found at the address. *Jones*, 724 So. 2d at 429 (¶8). We find he did. While we are not privy to the exact facts, if any, the officers related to the magistrate, in addition to those contained in the affidavit, there is no indication that any of the information was stale. We understand the hesitancy of law enforcement to disclose in the affidavit a specific date the CI observed the interior of a certain residence, as that could lead to the possible identification of the CI. Here, the CI had been used numerous times, had been "in the system" for over four years, and had been proved reliable. This lends to the affiants' conclusion that marijuana was located in the residence. Further, a "quantity of marijuana" had been observed by the CI. The police report as read by defense counsel indicated "several pounds" of marijuana was being stored at the residence. Even if the CI had observed the marijuana some days previously, there would be a likelihood that some would still be present, given the quantity observed. As timing is but one factor to establish probable cause, *Flake*, 948 So. 2d at 496 (¶9), we cannot say as a matter of law the affidavit was insufficient or that the magistrate erred in issuing the search warrant.

### C. Neutral Magistrate

¶30. Finally, Jackson argues pro se that the search warrant was not valid because it was

15

not signed by a neutral and detached magistrate. Jackson claimed that because he had pleaded guilty to a prior misdemeanor possession-of-marijuana charge before the same municipal judge, that judge could not be neutral at a later date.

¶31. Jackson did not present this argument before the trial court; therefore, he is procedurally barred from raising the issue for the first time here. In addition, the argument is without merit. While "[i]t is well-settled that an individual issuing a warrant must be a detached and neutral magistrate," here there is no evidence in the record indicating the municipal judge was not detached and neutral based on prior dealings with Jackson. *Mitchell v. State*, 931 So. 2d 639, 642 (¶7) (Miss. Ct. App. 2006). This issue is without merit.

### III. Evidence Tampering

¶32. Next, Jackson argues that the trial court erred in denying his motion to suppress evidence due to law enforcement allegedly tampering with the marijuana seized from his house.

¶33. The applicable version of Mississippi Rule of Evidence 901(a) states that in order "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." The proponent must also "show no reasonable inference of material tampering with, or substitution of, the evidence; however, Mississippi law has never required a proponent of evidence to produce every handler of evidence." *Ellis v. State*, 934 So. 2d 1000, 1005 (¶21) (Miss. 2006). "The defendant has the burden of proving tampering

16

or substitution of the evidence, and 'a mere suggestion . . .'" of substitution is insufficient. *Deeds v. State*, 27 So. 3d 1135, 1142 (¶20) (Miss. 2010).

¶34. In Jackson's motion to suppress,[9] he claimed there was a discrepancy between the weight of the marijuana that was allegedly recovered from the residence, and the weight submitted to the Mississippi Crime Laboratory. Attached to his motion was Officer Hinton's arrest report and Sergeant Smith's certified report to the crime lab on the amount of marijuana to be submitted for analysis totaling nineteen baggies. The trial court found the motion raised a chain-of-custody issue and held it in abeyance.[10]

¶35. At trial, defense counsel modified his argument from weight to amount, seeking to show that more marijuana baggies (nineteen) were submitted to the crime lab than were recovered from the house (nine). In support of his argument, defense counsel attempted to prove that only nine baggies of marijuana were shown in photographs taken by Sergeant Smith at the scene. On cross-examination, the following colloquy occurred between defense counsel and Captain Bridges:

---

[9] At the time of his arrest, Jackson was charged with possession of marijuana under thirty grams but not over 250 grams under section 41-29-139(c)(2)(C). In his motion to suppress filed in February 2015, he claims that while nineteen baggies were recovered from the residence as a result of the search warrant, only eighteen baggies were delivered to the lab, where it was determined the weight of the marijuana was over 250 grams, not under 250 grams as Officer Hinton had found. Jackson requested the evidence be suppressed due to this weight discrepancy, which counsel claimed caused Jackson's initial charge to be elevated from a misdemeanor to a felony. Jackson was ultimately indicted for possession with intent to distribute more than thirty grams but less than one kilogram under section 41-29-139(b)(1), and Jackson's argument related to this issue focused more on the number of baggies, not the weight.

[10] As the State notes, however, on appeal Jackson is no longer raising a chain-of-custody issue.

[DEFENSE COUNSEL]: And Mr. Smith, in your presence, took the photographs of those things that you identified as bags containing a green leafy substance; is that correct?

[CAPTAIN BRIDGES]: Yes, sir.

Q: And he took photographs of every item or every bag that appeared to contain a green leafy substance; is that correct?

A: Yes, sir. I think Smith took all the photographs that day.

During the cross-examination of Sergeant Smith, defense counsel had him count every distinct baggie containing the "green leafy substance" that he could visibly identify from the photographs presented, which totaled nine baggies. However, Sergeant Smith testified there were "baggies inside of the bigger baggies," and he was only testifying about the number of baggies clearly visible from the individual photographs. Sergeant Smith also confirmed that his report to the crime lab had a total of nineteen baggies submitted for testing. He testified in great detail as to what he submitted to the lab, as documented in his report, which totaled nineteen baggies: exhibit one was two clear plastic baggies; exhibit two was two large and five small baggies; and exhibit three was two large baggies and eight small baggies. Frazure, a forensic chemist at the crime lab, also testified about the submission of the same number of baggies for each exhibit, with a total net weight of 258.3 grams, which lab tests confirmed was marijuana.

¶36. Despite this testimony, in Jackson's motion for judgment notwithstanding the verdict or, in the alternative, a new trial, he continued to argue that the evidence was unlawfully tampered with by members of the Narcotics Division of the Clarksdale Police Department, because more marijuana was submitted to the crime lab "than was supposedly seized from

18

the home." The motion stated that a witness, presumably Sergeant Smith, "candidly admitted" seizing nine baggies of marijuana but submitted nineteen baggies to the lab for testing.

¶37. We are not persuaded by Jackson's argument of evidence tampering. There is no "candid admission" by any witness that only nine baggies of marijuana were seized from the house, only that nine baggies can be seen in the photographs. Further, Captain Bridges did not indisputably agree that a photograph was taken of every gram and baggie of marijuana, but merely that Sergeant Smith was the photographer that day.

¶38. The fact that all of the baggies could not be seen from the photographs does not mean that nineteen baggies of marijuana were not recovered from the house. The testimony implies that the baggies collected were the same number of baggies tested. The testimony of Officers Bridges, Smith, and Frazier did not support evidence tampering. Rule 901(a) was satisfied; the green leafy substance was proven to be marijuana. Jackson does not meet his burden of proving evidence tampering.

### IV. Sufficiency of the Evidence

¶39. Relatedly, Jackson argues that the evidence is insufficient to support the verdict because the statutory weight requirement was not met due to the alleged tampering of the marijuana. He also argues pro se that the State failed to meet its circumstantial-evidence burden.

¶40. The relevant inquiry to the sufficiency of the evidence is whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (abrogated on other grounds by *Little v. State*, 233 So. 3d 288 (Miss. 2017)). All credible evidence consistent with the defendant's guilt will be accepted as true, together with all favorable inferences that may be reasonably drawn from the evidence. *Robinson v. State*, 940 So. 2d 235, 239-40 (¶13) (Miss. 2006) (citing *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)). The State is allowed to prove crimes solely by circumstantial evidence, but such evidence must be "sufficient to prove the defendant's guilt beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence." *Fleming v. State*, 604 So. 2d 280, 288 (Miss. 1992). However, in a circumstantial-evidence case, we must scrutinize the jury's verdict more closely. *Madden v. State*, 42 So. 3d 566, 569 (¶9) (Miss. Ct. App. 2010). Still, "the intent to sell or deliver contraband may be established by inference from circumstantial evidence." *Jowers v. State*, 593 So. 2d 46, 47 (Miss. 1992).

¶41. Since we found Jackson's argument on evidence tampering without merit, this argument is without merit as well. The evidence showed over 250 grams of marijuana was seized from Jackson's residence. This evidence is sufficient to prove the weight requirement element beyond a reasonable doubt.

¶42. There was also sufficient evidence presented to support the jury's finding that Jackson possessed and intended to sell the marijuana. The drug was found throughout the house in various stages of being packaged—divided in multiple and different size baggies. Also seized was a package of sandwich baggies consistent with those used to store the

20

marijuana at the residence, a blue plastic tray with a green leafy substance and residue, fifteen small clear plastic baggies (some with green leafy residue), one cloth bag with residue, a Walmart bag with residue, and a digital scale indicating Jackson was measuring the marijuana for sale. Further, the elaborate surveillance system on the modest house, complete with cameras, a DVR, and a live-feed flat-screen monitor, indicated Jackson was involved in the drug trade. During one of Jackson's recorded telephone calls at the police station played to the jury, Jackson told an individual to "[g]o to the spot . . . under that tub, is a green box. It got some racks in it, man. Get it. Go over there now man. You need to stop doing what you['re] doing now and go over there and get it." Possession of a large amount of money—hidden—also indicated Jackson was selling the marijuana. The jury was given the lesser-included offense instruction of simple possession but elected to convict Jackson of the greater crime. There was sufficient evidence for the jury to draw a reasonable inference of possession of marijuana with intent to sell, to the exclusion of every reasonable hypothesis consistent with innocence.

¶43.   Additionally, in his pro se brief, Jackson argues the State failed to prove he lived at the residence or constructively possessed the marijuana because officers did not see him entering or leaving the residence on the day of the search, and he denied having keys to the house. Even so, the State presented evidence to show that several utility bills were addressed to Jackson at the house's address.[11] Further, in the telephone calls from the police

[11] In his pro se brief, Jackson claims these utility bills, as well as his social-security card, were "false evidence" created by the district attorney, and the testimony by Captain Bridges and Sergeant Smith about finding these documents was false as well. No evidence, however, supports these contentions.

station, Jackson speaks of the house as his. Even though Jackson pointed to evidence showing he did not live at the residence, "factual disputes are properly resolved by the jury . . . ." *Moore v. State*, 859 So. 2d 379, 385 (¶26) (Miss. 2003). A rational trier of fact could find beyond a reasonable doubt that Jackson resided, and had dominion and control, over the residence at 343-B Bolivar Street.

### V.    Motion for Recusal

¶44.    Jackson contends that the trial court erred in denying his motion for recusal.[12] Jackson requested the trial judge recuse himself due to Jackson's involvement in a fight with a Coahoma County Sheriff's Department deputy in a prior case in 2006. Jackson claims he was assaulted by the deputy in front of the judge during his arraignment proceedings. The trial judge denied the motion, claiming he had no recollection of the altercation; therefore, it could not bear on his impartiality during Jackson's trial.

¶45.    Canon 3(E)(1)(a) of the Code of Judicial Conduct explains the rule concerning judicial disqualification: "Judges should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances . . . including but not limited to instances where . . . the judge has a personal bias or prejudice concerning a party . . . ." *See also* UCRCCC Rule 1.15 (giving procedure for motions for recusal of judges). The decision to recuse is left to the sound discretion of the trial judge, as long as the correct legal standards are consistently applied. *Jackson v. State*, 962 So. 2d

---

[12] Jackson also raised this argument against the same judge in his prior appeal on yet another charge. We found that issue without merit as well. *Jackson*, 1 So. 3d at 927-28 (¶¶16-18).

649, 663 (¶29) (Miss. Ct. App. 2007). "On appeal, a trial judge is presumed to be qualified and unbiased and this presumption may only be overcome by evidence which produces a reasonable doubt about the validity of the presumption." *Id.*

¶46. The trial judge did not abuse his discretion in denying Jackson's request for recusal. The judge did not even recall the 2006 incident in the courtroom; therefore, a reasonable person would not question the judge's impartiality. Further, Jackson has provided no specific evidence to indicate the trial judge was biased or unqualified, except his own numerous speculative comments. The fact the judge ruled against him on certain motions or jury instructions is insufficient. *See id.* at (¶31). The record does not indicate that the trial judge held any bias against Jackson during the trial or in his rulings. This issue is without merit.

## VI.   Cumulative Error

¶47. Jackson argues that the cumulative effect of various errors deprived him of a fundamentally fair trial.

> The cumulative error doctrine stems from the doctrine of harmless error which holds that individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial. However, where there was no error in part, there can be no reversible error to the whole.

*Harris v. State*, 970 So. 2d 151, 157 (¶24) (Miss. 2007) (citations and internal quotation marks omitted). Here, since there were no errors, harmless or otherwise, there was no cumulative error.

## VII.   Ineffective Assistance of Counsel

23

¶48.    Jackson, arguing pro se, claims one of his defense counsel was ineffective because counsel allegedly "guaranteed" that Jackson would not have to go to trial since the State would be unable to prove that he possessed marijuana.  Additionally, he claims counsel incorrectly told him the marijuana obtained from the search warrant would be excluded, as would be the telephone calls made at the police station.

¶49.    "When a party raises an ineffective assistance of counsel claim on direct appeal, the proper resolution is to deny relief without prejudice to the defendant's right to assert the same claim in a post-conviction relief proceeding." *Graves v. State*, 914 So. 2d 788, 798 (¶35) (Miss. Ct. App. 2005).  This Court will "reach the merits on an ineffective assistance of counsel issue on direct appeal only if '(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.'" *Id.*  The record does not support Jackson's contentions or affirmatively show ineffectiveness of constitutional dimensions.  Further, the parties have not entered any relevant stipulation.  Accordingly, this Court denies relief without prejudice to Jackson's right to request permission to pursue the issue in a motion for post-conviction relief.

## VIII.  Prosecutorial Misconduct

¶50.    Arguing pro se, Jackson claims the State committed prosecutorial misconduct. However, at trial his counsel made no such objections.  It is well established that "the failure to make a contemporaneous objection serves as a waiver of any error" and is procedurally barred.  *Washington v. State*, 957 So. 2d 426, 429 (¶13) (Miss. Ct. App. 2007).  To avoid

the procedural bar, Jackson argues that the prosecutor's conduct was "so exceptionally flagrant that it constitute[d] plain error, and [could be] grounds for reversal even if the defendant did not object to it." *See United States v. Carroll*, 26 F.3d 1380, 1385 n.6 (6th Cir. 1994).

¶51.   Jackson discusses numerous witnesses he contends were allowed to present "false testimony" during various times, including Sergeant Smith at the grand jury proceedings, as well as prosecutorial misstatements made during opening and closing statements at trial, all of which allegedly prejudiced him.  He argues against the admission of the State's "false" evidence and testimony showing he lived at the house, the nineteen baggies of marijuana, and his outstanding arrest warrant.

¶52.   Prosecutors are allowed "wide latitude" in their arguments, "limiting them not only to facts, but also to deductions and conclusions which may be drawn therefrom, and to the application of the law to those facts."  *Holly v. State*, 716 So. 2d 979, 988 (¶33) (Miss. 1998).  "Even when a prosecutor has made an impermissible comment . . . a showing of prejudice [is required] to warrant reversal." *Outerbridge v. State*, 947 So. 2d 279, 286 (¶23) (Miss. 2006).

¶53.   Here, the record does not indicate that the State presented any "false evidence"— Jackson's arguments about the residence, baggies of marijuana, and outstanding arrest warrant have all been previously discussed in other issues and found without merit. Moreover, prosecutors are not limited only to the facts, but any reasonable conclusions that can be drawn from them.  Finally, the prosecutor's opening or closing statements contained

25

no statements that were impermissible, "exceptionally flagrant," or prejudicial to Jackson. This issue is without merit.

## IX. State's Evidence

¶54.    Before trial, Jackson moved to suppress the evidence obtained by the issuance of the search warrant because it was allegedly issued unlawfully. Now, for the first time on appeal, Jackson argues pro se that the State knowingly used false evidence and "perjured testimony" at the pre-trial suppression hearing; therefore, the trial court should have suppressed the evidence. This argument is procedurally barred because it was not presented before the trial court. *See Bates*, 879 So. 2d at 522 (¶7). Moreover, it is without merit.

¶55.    Jackson claims Captain Bridges's testimony at the suppression hearing was false and Bridges later committed perjury at trial because his testimony "changed" to mislead the jury into believing Jackson was the only person who had access to the residence. Also, Jackson argues that he was arrested based on an invalid outstanding warrant. However, as previously discussed, the trial court denied Jackson's motion to suppress the evidence because the search was conducted under a valid warrant. Also, Jackson's arguments about false testimony are not supported by the record and are without merit.

## X. Confidential Informant

¶56.    Jackson argues pro se that the trial court erred in denying his request for disclosure of the CI's identity. However, it is well established that "the disclosure of an informer who is not a material witness to the guilt or innocence of the accused, is within the sound discretion of the trial court." *Breckenridge v. State*, 472 So. 2d 373, 377 (Miss. 1985).

26

Here, the CI was not a material witness but alerted law enforcement to the fact that a large quantity of marijuana could be found in Jackson's residence. Therefore, disclosure of the CI's identity was not necessary, and this issue is without merit.

### XI. Sentence

¶57. Jackson claims that the trial court abused its discretion in declining to reduce Jackson's sentence under Mississippi Code Annotated section 41-29-139(h) (Supp. 2014). This code section gives the trial judge discretion to mitigate a sentence by twenty-five percent or more, if the person is "convicted of an offense under this section that requires the judge to impose a prison sentence which cannot be suspended or reduced and is ineligible for probation or parole . . . ." *Id.*

¶58. Jackson was originally indicted as a non-violent habitual offender under section 99-19-81 and as a subsequent drug offender under section 41-29-147. However, the State later moved to amend the indictment, and an order was entered allowing Jackson to be sentenced under either section 99-19-81, or as a violent habitual offender section 99-19-83, meaning he could face a life sentence under the latter statute.

¶59. Moreover, in June 2013, at the time Jackson committed the offense, the maximum sentence he could receive if convicted as a non-violent habitual and subsequent drug offender was sixty years. *See* Miss. Code Ann. §§ 41-29-139(b)(1), 41-29-147 (Rev. 2013). However, in 2014 the Legislature amended the drug-trafficking statute, and the maximum sentence for the same offense would be ten years. *See* Miss. Code Ann. § 41-29-139(b)(2)(A)(2) (Supp. 2016).

¶60. At the sentencing hearing, the State noted that it would agree to Jackson being sentenced under section 99-19-81, relieving him of a life sentence under section 99-19-83. Additionally, the State agreed that Jackson should receive the benefit of being sentenced under the amended sentencing statutes, reducing his potential sentence from sixty to ten years. Because the sentencing recommendations by the State were reasonable, the trial court decided not to reduce Jackson's sentence under section 41-29-139(h). We find no error in this regard.

¶61. The judgment and sentence of the circuit court are affirmed.

¶62. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**